Donald Kie, #45225
Lovelock Correctional Center
1200 Prison Road
Lovelock, NV 89149
*Petitioner in pro se*

# UNITED STATES DISTRICT COURT
## DISTRICT OF NEVADA

DONALD KIE, JR. , Petitioner, )
(Full Name)                     )
            vs.                 )   CASE NO. 3:20-cv-00709-RJC-CLB
                                )
WARDEN GARRETT , Respondent,    )
(Name of Warden, Superintendent, jailor or )
authorized person having custody of petitioner) )
                                )        AMENDED
            and                 )   PETITION FOR A
                                )   WRIT OF HABEAS CORPUS
                                )   PURSUANT TO 28 U.S.C. § 2254
The Attorney General of the State of Nevada )   BY A PERSON IN STATE CUSTODY
                                )   ( **NOT** SENTENCED TO DEATH)

----------------------------------------

1.  Name and location of court, and name of judge, that entered the judgment of conviction you are
    challenging: *Eighth Judicial District Court, Clark County, NV, Judge Smith*

2.  Full date judgment of conviction was entered: *12 / 01 / 2016* .   (month/day/year)

3.  Did you appeal the conviction? ✓ Yes ___ No.  Date appeal decided: *12 / 15 /2017* .

4.  Did you file a petition for post-conviction relief or petition for habeas corpus in the state court?
    ✓ Yes ___ No. If yes, name the court and date the petition was filed: *8th J.D.C.,*
    *Clark County   7 / 31 /2018* . Did you appeal from the denial of the petition for
    post-conviction relief or petition for writ of habeas corpus? ✓ Yes ___ No. Date the appeal
    decided: *08 / 10 /2020*. Have all of the grounds stated in this petition been presented to the
    state supreme court? ___ Yes ✓ No. If no, which grounds have not? *Ground 2*

5.  Date you are mailing (or handing to correctional officer) this petition to this court: *5 /13 /21* .
    **Attach to this petition a copy of all state court written decisions regarding this conviction.**
    *(See Exhibits 1-3.)*

LCCLL FORM 36.068

6. Is this the first federal petition for writ of habeas corpus challenging this conviction? ✓ Yes
___ No.   If no, what was the prior case number ? _____.   And in what court was

the   prior action filed? _____.

Was the prior action ___ denied on the merits  or ____  dismissed for procedural reasons  (check
one). Date of decision: _____/_____/_____.   Are any of the issues in this petition raised in the
prior petition? ___ Yes ___ No.   If the prior case was denied on the merits, has the Ninth
Circuit Court of Appeals given you permission to file this successive petition? ___ Yes ___ No.

7. Do you have any petition, application, motion or appeal (or by any other means) now pending in
any court regarding the conviction that you are challenging in this action? ___ Yes ✓ No.
If yes, state the name of the court and the nature of the proceedings: _____

_____.

8. Case number of the judgment of conviction being challenged: *C-16-312386-2*   .
9. Length and terms of sentence(s): *163 to 408 months*   .
10. Start date and projected release date: *About 2/25/2016*   .
11. What was (were) the offense(s) for which you were convicted: *conspiracy to commit
robbery; robbery; battery w/substantial bodily harm; battery w/intent to commit a crime*.
12. What was your plea? ___ Guilty ✓ Not Guilty ___ Nolo Contendere. If you pleaded guilty
or nolo contendere pursuant to a plea bargain, state the terms and conditions of the agreement:

_____.

13. Who was the attorney that represented you in the proceedings in state court?  Identify whether
the attorney was appointed, retained, or whether you represented yourself *pro se* (without counsel).

| | Name of Attorney | Appointed | Retained | *Pro se* |
|---|---|---|---|---|
| arraignment and plea | *Kenneth G. Frizzell* | ✓ | ___ | ___ |
| trial/guilty plea | *Kenneth G. Frizzell* | ✓ | ___ | ___ |
| sentencing | *Benjamin C. Durham* | ✓ | ___ | ___ |
| direct appeal | *Benjamin C. Durham* | ✓ | ___ | ___ |
| 1st post-conviction petition | *Waleed Zaman* | ✓ | ___ | ___ |
| appeal from post conviction | *Waleed Zaman* | ✓ | ___ | ___ |
| 2nd post-conviction petition | _____ | ___ | ___ | ___ |
| appeal from 2nd post-conviction | _____ | ___ | ___ | ___ |

_Evidentiary Hearing Requested_

_The state court erred in not granting Petitioner an evidentiary hearing. Petitioner requests an evidentiary hearing from this Court. See Shirley v. Yates, 807 F.3d 1090, 1103 (9th Cir. 2015) (evidentiary hearing not barred because . . state court errs rather than petitioner ,lack of diligence)._

## STATEMENT OF THE CASE

After a Justice Court bindover, Donald Kie was charged by way of Criminal Complaint, in the Eighth Judicial District Court in the State of Nevada, on February 25, 2016 as follows: one (1) count of conspiracy to commit robbery (felony); one (1) count of battery with intent to commit a crime (felony); one (1) count of battery with substantial bodily harm (felony); one (1) count of robbery with use of a deadly weapon (felony); and one (1) count of grand larceny auto (felony). i. An Amended Information was thereafter filed removing the one (1) count of GLA.

On June 6, 2016, the State filed a Motion to Admit Res Gestae Evidence and/or Evidence of Other Crimes, Wrongs or Acts. Mr. Kie's counsel did not object to its filing, and there was no _Petrocelli_ hearing. As such, the Res Gestae evidence was admitted and later used at trial.

_FN1) Petrocelli v. State, 692 P.2d 503 (1985)._

3

Trial then commenced on June 20, 2016 and lasted for two days after allowing for one day of voir dire.                              . After trial, Mr. Kie was found guilty of the following: Conspiracy to Commit Robbery, Robbery, Battery Resulting in Substantial Bodily Harm, and Battery with Intent to Commit Crime.

A Judgment of Conviction was thereafter filed on December 1, 2016, and Mr. Kie was sentenced as follows: 24 to 60 months for the conspiracy to commit robbery, a consecutive 72 to 180 months for robbery, 19 to 48 months for battery with substantial bodily harm, consecutive to the sentence for robbery, and 48 to 120 months for battery with intent to commit a crime to run consecutive to the sentence for battery with substantial bodily harm.                . This sentence was an aggregate minimum term of one hundred sixty-three (163) months and a maximum term of four hundred eight (408) months in the Nevada Department of Corrections.

Appellant thereafter filed a Motion to Set Aside Verdict and Enter Judgment of Acquittal on November 14, 2016.                    The State filed its Opposition on November 17, 2016.              After the hearing on the matter, the court denied Mr. Kie's request.

On July 31, 2018 after a direct appeal was denied, Mr. Kie filed a Writ for Habeas Relief (post-conviction) based upon claims of ineffective assistance of

4

counsel.                              counsel was thereafter appointed and filed a

Supplemental Petition.

At a hearing on this matter, Mr. Kie's request for relief was denied without an

evidentiary hearing, over Mr. Kie's objection.

The district court filed its Findings of Facts, Law, and Order, on June 18,

2019, stating that there was no ineffective assistance as a result of failure to file an

Opposition to the "bad acts" Motion.            In its Order, the Court found that

previous counsel was not ineffective for failing to oppose the state's "Bad Acts"

Motion, as such; first, that the evidence was properly admitted res gestae evidence.

The Order notes that the Nevada Court of Appeals previously held

that the district court did not abuse its discretion in allowing the admission of said

res gestae evidence.            The court specifically held that the prejudice analysis

for reviewing plain error on direct appeal was equivalent to the prejudice analysis to

show ineffective assistance of counsel, however the case cited is non-binding on the

Nev. Sup. Ct.    Secondly, the district court found that previous counsel was

effective, and noted that the specific reasons given for not opposing the "Bad Acts"

Motion (that the state had already indicated it would offer no additional video

evidence than that already introduced at preliminary hearing) were not below a

reasonable standard.

FN2 ) Gordon v. United States, 518 F.3d 1291 (11th Cir. 2008).

In analyzing the *Big Pond*[3] factors, the Court held that the act in question (relating to a video of an alleged drug exchange from the hands of Appellant to co-defendant, Mr. Eagles) was relevant to show the state's theory of payment of drugs in return for Mr. Eagles committing some violent act against the victim.

Secondly, the Court held that the act was proved by clear and convincing evidence and held that the evidence was not significantly more prejudicial than probative.

The Court also denied Mr. Kie's IAC claim regarding his inability to review crucial video surveillance in the instant matter, prior to trial. The Court found that the allegations were self-serving, and noted specifically that Mr. Kie stated this claim on the record during a hearing on a Motion to Consolidate, and that the court directed counsel to "get a copy to Petitioner as soon as possible and counsel said that he would do so." The Court additionally found that Mr. Kie did not meet his burden to show prejudice, as the video was used at preliminary hearing and its existence was known to him prior to trial. Finally, the court found that Mr. Kie did not indicate he would have plead "Guilty" but for reviewing said video surveillance.

Altogether, the Court denied the claims in the Petition without evidentiary hearing.

FN3) Bigpond v. State, 270 P. 3d 1244 (2012).

6

Mr. Kie appealed the denial of his petition to the Nevada Supreme Court. That appeal was denied Mr. Kie timely filed a pro se petition for writ of habeas corpus pursuant to 28 U.S.C. ss 2254 in this Court. This Court then ordered Mr. Kie to file an amended petition, which he does now.

///

///

///

## STATEMENT OF THE FACTS

On November 8, 20 15, at approximately 9:20PM, Joseph McKinney was attacked by Bryan Eagles and another unknown individual in the parking lot of the 5th avenue Pub.                    As he approached the 5th Avenue Pub, Mr. Eagles and this unknown individual attacked him, after which it appears that Mr. Eagles took Mr. McKinney's shoes, and another unknown individual reached into his pocket for his car keys and took his truck.

At trial, the state used Res Gestae evidence to argue that Mr. Kie provided narcotics to Mr. Eagles, in exchange for him attacking Mr. McKinney. At trial, the state used various video surveillance and accompanying stills, in which Mr. Kie was not seen attacking Mr. McKinney or taking anything from his person or anywhere else.                    The surveillance video, however, appears to show Mr. Kie touching his hand to his before touching hands with Mr. Eagles.

. The state argued that this act was a narcotics transaction in exchange for Mr. Eagles and the unknown individual attacking Mr. McKinney.

### 1. Michael Laird Testimony

Michael was a manager of the 5th Avenue Pub but was not present on the night in question.                    Mr. Laird provided surveillance from the 5th avenue Pub to Officers for Las Vegas Metropolitan Police department and testified that he recognized Mr. Kie.

## 2. Mr. McKinney Testimony

Mr. McKinney testified that on November 8th, 2015 at around 9:00PM, he drove to the 5th Avenue Pub, at which time he sat in his truck for an extended time after parking. After walking towards the entrance, Mr. McKinney testified to being struck from behind. Mr. McKinney implied that his memory of the night was limited Mr. McKinney further identified Mr. Eagles as one of the assailants that attacked him, but could not identify the other, nor did he claim that it was Mr. Kie. It was Mr. McKinney's belief that a previous argument with Mr. Kie had led to the incident in question. He did not, however, give any testimony that Mr. Kie ordered any attack on him, or took any of his personal items from him after any such attack. Mr. McKinney also testified that Mr. Kie was over his body at some point after the attack but conceded that "that night was really kind of foggy."

## 3. Angela Bacon Testimony

Ms. Bacon was a bartender present at the 5th Avenue Pub on the night of the instant events who was not a percipient witness. She testified that at some point Mr. Kie entered the bar laughing and told her to come outside to see something. Ms. Bacon acknowledged that the area surrounding the Pub was frequented by drug users or unemployed people. After hearing from Mr. Kie, Ms. Bacon went outside where she believed to observe Mr. McKinney

sleeping. .    .         While outside, Ms. Bacon observed several individuals around

Mr. Eagles, including individuals with the moniker Chi Town and Gyro, as well as

Lisa, and a female named Cinderella.             She did not personally witness

any attack on Mr. McKinney.              · Ms. Bacon further testified that Mr.

McKinney was dragged away from the bar to an area near the trash by at least four

people, at which time Mr. Kie was still present around the bar.

        Ms. Bacon also testified that a few days after the incident on December 14,

2015, Mr. Kie was present at the bar, where he indicated that he was nervous about

the contents of the video, had spoken to an attorney, and claimed that he "didn't have

anything to worry about as long as it looked like he was just wiping his mouth and

spitting on his hand or something and shaking somebody else's hand."

        Ms. Bacon also identified both Mr. Kie and Mr. Eagles on photographic lineups

provided by detective Jason Auschwitz, based on her memory of them as regulars at

the 5th Avenue Pub.

        Ms. Bacon also testified to her experience viewing what she believed to be

various past drug transactions at the bar.             On the night of the incident, Ms.

Bacon testified from the video (and not from any personal recollection of hers) that

Mr. Kie and Mr. Eagles "they were just touching each other's hands."

Ms. Bacon was then allowed to speculate (without objection) as to what she believed

the touch of hands signified, and she claimed, "There was transferring of narcotics."

In support of this, Ms. Bacon claimed to have witnessed narcotics transferred between individuals and involving someone's' mouth during the four or five months she worked at Fifth Street Pub.                    Notwithstanding, Ms. Bacon acknowledged that she was neither present for any narcotics exchange, nor did she witness any drugs exchanging hands between Mr. Kie and Mr. Eagles.

### 4. Jessica Sanchez Testimony

At trial, Ms. Sanchez testified in her capacity as a trauma nurse, regarding the extent of Mr. McKinney's injuries. Ms. Sanchez observed a hematoma on Mr. McKinney's forehead, as well as a scrape on his knees.                    Defense counsel mostly did not dispute that Mr. McKinney suffered serious injuries, with the exception of co-defendant's counsel casting doubt regarding whether or not a bottle had been shoved in Mr. McKinney's rectum.

### 5. Justin Duke Testimony

Officer Justin Duke testified to responding to the 5ᵗʰ Avenue Pub on the night of the incident in question, at which time he spoke with Mr. McKinney. Officer Duke testified that Mr. McKinney did not have any shoes on when he appeared on the scene.                    Officer Duke was then allowed to testify regarding Mr. McKinney's statements to him, without objection by trial counsel.

On cross examination, Officer Duke acknowledged that Mr. McKinney claimed to have been attacked by several individuals.                    Officer Duke specified that he

indicated in his report that he believed it was between five and seven individuals, at least one of whom was female.

### 6. Jason Auschwitz Testimony

Detective Jason Auschwitz was the lead investigator for this matter and interviewed only non-percipient witnesses to the instant events. Detective Auschwitz interviewed Mr. McKinney, Michael Laird, and Angela Bacon, neither of whom witnessed the attack on Mr. McKinney, and all of whom based their knowledge of the event on the provided surveillance footage.

Detective Auschwitz was additionally allowed to testify about the nature of narcotic transactions, despite that he neither witnessed any narcotics transaction in the instant matter, nor did he witness any narcotics exchanging hands in the surveillance video.                    Detective Auschwitz was then allowed to speculate regarding the video's contents, without sufficient factual basis regarding the transaction itself.          He then made inferences to Mr. Kie as a drug dealer, based again solely on his viewing of the video.     Regarding the alleged narcotics transaction, Detective Auschwitz further confirmed that all he saw on the video was a touch between Mr. Eagles and Mr. Kie.

Detective Auschwitz further confirmed that Mr. McKinney acknowledged owing money to two individuals, known to him as Lisa and Sexy. Detective Auschwitz admitted that he failed to do any follow-up to interview or

locate said suspects.                        Detective Auschwitz explained that Lisa and

Sexy "were not in play" as the "initial robbery was involving two males."

This contradicted Officer Duke's earlier testimony regarding Mr. McKinney's belief

concerning a group of five to seven individuals associated with the attack, at least

one of whom was a female.

Case No. C-16-313419-1

Meanwhile, Mr. Kie was also being prosecuted in a Clark County drug possession case. An Information was filed in state district court on that case on March 17, 2016; while Mr. Kie was in custody on the present case. (See Exhibit 4) The same deputy district attorney, William Flinn, Jr., was assigned to both cases.

However, Mr. Kie was represented by different defense counsel on the two cases. On the instant case, Mr. Kie was represented by Kenneth Frizzell, an independent attorney appointed by the Court. In the drug possession case, Mr. Kie was represented by Clark County deputy public defender Katrina Ross.

After the trial and conviction in the instant case, the State filed an Amended Information reducing the drug possession case from two felony counts to one misdemeanor count (See Exhibit 5).

13

However, outside of the record, and presumably unbeknownest to defense counsel Frizzell, prosecutor Flinn communicated a plea offer to counsel Ross that pertained to both cases. Ross then verbally communicated the plea offer to Mr. Kie.

Inter alia, it is this set of facts that Mr. Kie intended to prove at a post-conviction evidentiary hearing — and now, by extension, at an in posse evidentiary hearing before this Court.

### Video Evidence at Trial - Instant Case

Also outside of the state court record is that Mr. Kie never had an opportunity to view the video evidence against him with his attorney. It is clear in the record that the trial court instructed Mr. Frizzell to visit Mr. Kie in jail and show him the video.

It is Mr. Kie's consistent allegation that Mr. Frizzell never did so.

At trial, Mr. Frizzell's strategy was to argue that the individual depicted on the video wasn't Mr. Kie. Mr. Kie himself did not know this was the trial strategy. Also, events from the evening exculpatory to Mr. Kie may have been captured on video surveillance but never shown to the jury.

State concisely every ground for which you claim that the state court conviction and/or sentence is unconstitutional. Summarize briefly the facts supporting each ground. You may attach up to two extra pages stating additional grounds and/or supporting facts. You must raise in this petition all grounds for relief that relate to this conviction. Any grounds not raised in this petition will likely be barred from being litigated in a subsequent action.

## GROUND 1

I allege that my state court conviction and/or sentence are unconstitutional, in violation of my _____Sixth_____ Amendment right to *effective assistance of counsel*, based on these facts:

> **Trial Counsel failed to timely object to admission of highly prejudicial Res Gestae evidence.**
>
> "Evidence of a defendant's other crimes, wrongs, or bad acts is not admissible to prove that the accused acted in a similar manner for purposes of the charge at issue." *Cipriano v. State*, 111 Nev. 534, 541, 894 P.2d 347, 352 (1995) (overruled on other grounds) (citing *Beck v. State*, 105 Nev. 910, 911-12). This rule acknowledges that evidence of prior wrongs may improperly influence the jury, thereby resulting in a conviction either due to the jury's improper belief that the accused is predisposed to crime, or because the jury concludes that the Defendant is a bad person. *Id.* (citing *Crawford v. State*, 107 Nev. 345, 348 (1991)). As such, "[a]bsent certain exceptions, evidence of a person's character or a trait of his character is not admissible for the purpose of proving that he acted in conformity therewith on a particular occasion." *Taylor v. State*, 109 Nev. 849, 853, 858 P.2d 843 (1993). Accordingly, "evidence of other crimes, wrongs

///

/// 

///

1  or acts is not admissible to prove the character of a person in order to show that he acted in
2  conformity therewith." *Id.* (citing NRS 48.045). Courts generally disfavor bad acts evidence
3  because it is "irrelevant and prejudicial, and forces a defendant to defend against vague and
4  unsubstantiated charges." *Rhymes v. State*, 121 Nev. 17, 21, 107 P.3d 1278 (2005). As such, bad
5  acts evidence is presumed inadmissible, and the State must bear the burden of requesting its
6  admission and establishing its admissibility." *Id.*

7       Pursuant to *NRS* 48.045, bad acts are presumptively inadmissible at trial to prove
8  propensity. To overcome such presumption, the state must request the admission of evidence at a
9  hearing outside of the jury's presence and establish all of the following: (1) the incident is relevant
10 to the crime charged; (2) the act is proven by clear and convincing evidence; and (3) the probative
11 value of the evidence is not substantially outweighed by the danger of unfair prejudice.'"
12 Furthermore, *NRS* 48.035(3) only allows evidence of another act or crime "so closely related to
13 an act in controversy or a crime charged that an ordinary witness cannot describe the act in
14 controversy or the crime charged without referring to the other act or crime."

15      Regarding prejudice to a Defendant, all relevant evidence is inadmissible whenever its
16 probative value is substantially outweighed by the danger of unfair prejudice, confusion of the
17 issues, or confusing the jury *NRS* §48.035. *see also Sonner v. State*, 930 P.2d 710, 714, 112 Nev.
18 1328 (1996). Unfairly prejudicial evidence is any such evidence that encourages the jury to
19 convict the defendant on an improper basis. *Holmes v. State*, 306 P.3d 415, 420 (2013). Whether
20 something is unfairly prejudicial "speaks to the capacity of some concededly relevant evidence
21 to lure the fact-finder into declaring guilt on a ground different from proof specific to the offense
22 charged." *Old Chief v. U.S.*, 519 U.S. 172, 180, 117 S.Ct. 644, 650 (1997). Stated slightly
23 differently, unfairly prejudicial evidence has an undue tendency to suggest a decision on an
24 improper and/or emotional basis. *Id.*

25      Here, trial counsel's failure to file an Opposition against the Motion to Admit Res Gestae
26 Evidence, or other Crimes, Wrongs or Acts, amounted to a stipulation allowing such evidence in.
27 In fact, the Order of Affirmance from the Nevada Court of Appeals acknowledges that the failure
28 to file said Opposition was an acquiescence of the requested Res Gestae evidence.

1    Failure to file an Opposition had the two-fold effect of both allowing the evidence to be
2    admitted without proper adversarial challenge, and also of precluding Mr. Kie from ensuring that
3    the jury received an appropriate limiting instruction. At trial, the state was able to gather testimony
4    from Ms. Bacon about her experience with past illicit drug transactions at the Fifth Avenue Pub
5    and allowed her to speculate that the instant events constituted a drug transaction, despite that she
6    was not present.                         Moreover, that she claimed to observe several narcotics
7    transactions in the past, in which drugs were transferred in the same way as the state argued they
8    were in this case, likely led the jury to believe that Mr. Kie was involved in an even greater
9    number of bad acts than just the instant narcotics transaction.

10        Furthermore, meaningful pretrial litigation of the Res Gestae evidence would have
11   required a *Petrocelli* hearing before its admission, where the state would have needed to meet the
12   heightened burden of clear and convincing evidence. Although it was clear that the state's theory
13   at trial was that Mr. Kie paid Mr. Eagles in drugs to commit the attack against Mr. Eagles, it was
14   similarly clear that nobody who witnessed the supposed narcotics transaction testified.

15        The evidence that it was in fact a narcotics transaction amounted mostly to Ms. Bacon
16   and Detective Auschwitz' speculation, which suggests that it would not have met the clear and
17   convincing standard that would have applied at a *Petrocelli* hearing.

18        Moreover, a filed opposition would have allowed proper and effective argument
19   regarding a limiting instruction at trial. For instance, the probative value of specifically
20   mentioning that it was a narcotics transaction was limited, as the state did not need to prove that
21   Mr. Kie passed drugs to Mr. Eagles, but only that he passed something to him as part of a
22   conspiracy to rob Mr. McKinney. Thus, proper pretrial litigation by trial counsel could have
23   resulted in the Court ordering the state to refrain from any such specific mention of drugs. This
24   would have maintained most of the probative value of the evidence, while simultaneously
25   avoiding the strong prejudicial effect inherent within allegations of drug use and sales. Without
26   filing an Opposition, however, the Court was simply not provided with the information that it
27   could have considered to rule in Mr. Kie's favor concerning the Res Gestae evidence.

28

1    As a result, failure to file such an opposition allowed the state to introduce several

2  prejudicial instances of testimony regarding Mr. Kie's specific drug dealing activities, thereby

3  prejudicing the jury against him.                        . In fact, during its rebuttal closing, the

4  State specifically implied that Mr. Kie ostensibly provided crack or meth to Mr. Eagles.

5    At such time, it would have been impossible for the jury to separate their inevitable negative

6  views of Mr. Kie as a drug dealer, from their decision of whether the evidence indicated his guilt.

7  Nonetheless, even if a limiting instruction would have been effective here, trial counsel was

8  ineffective for failing to request one or, alternatively, for failing to oppose the introduction of Res

9  Gestae evidence.

10    Thus, the prejudice to Mr. Kie is clear, as the evidence against him amounted essentially

11  to his presence at the time of the attack, and his status as a drug dealer.                 Both

12  Ms. Bacon and Detective Auschwitz were able to make numerous prejudicial references to Mr.

13  Kie, as a result of the lack of opposition to the Res Gestae evidence.

14  The jury was reminded several times of Mr. Kie's drug dealing; to wit, Ms. Bacon indicated that

15  she observed similar drug dealing activity as a bar-tender and was also allowed to testify that the

16  video evidence showed a narcotics transaction between Mr. Kie and Mr. Eagles, despite her lack

17  of any training or expertise regarding such transactions, and her lack of personal knowledge of

18  the events themselves.                 . Similarly, Detective Auschwitz made similar claims that

19  he believed Mr. Kie to be providing drugs to Mr. Eagles, despite his not being present at the time,

20  and having no way to identify the item that exchanged hands, without resorting to speculation.

21    Where a jury might otherwise be willing to offer the benefit of the doubt to an

22  ordinary defendant, they would offer no such benefit to a defendant that has been repeatedly

23  painted as a drug dealer, and particularly when identified as such by a detective. Altogether, these

24  statements were prejudicial, especially given that Mr. Kie was not seen directly attacking Mr.

25  McKinney, and, as a result, the large extent of the state's evidence against him amounted to this

26  bad act evidence.                 This would make it essentially impossible for an

27  average juror to disentangle their negative feelings associated with drug dealing from the actual

28  evidence proffered in this case. As a result, the jury was more likely to convict Mr. Kie, solely

18

based on preconceived prejudices against selling narcotics, and not based upon whether Mr. Kie committed any act that amounted to a conspiracy. Thus, trial counsel's act of acquiescing to the State's proffer of Res Gestae evidence greatly reduced Mr. Kie's chance to succeed at trial.

The state court adjudication of this claim involved an unreasonable application of Strickland. Fairminded jurists could not disagree. (See Harrington v. Richter, 562 U.S. 86, 100 (describing 28 U.S.C. ss 2254(d)(1))).

The Nevada Court of Appeals merely concluded that since it was not plain error for the trial court to exclude the complained-of evidence sua sponte at trial, trial counsel was not deficient for failing to oppose the States motion and not seek to the relevant Petrocelli hearing. However, trial counsel's failure fell below prevailing norms of criminal defense attorneys in Las Vegas in 2015. Yet the State courts did not consider or comment on professional norms whatsoever.

Also, the State courts merely relied on defense counsel's pre-trial explanations as to why he was not opposing the State's motion. But trial counsel

offered no strategic reason as to why he didn't oppose the motion. In other words, Mr. Kie had nothing to lose by trial counsel filing an opposition. But, had the opposition been successful, he had plenty to gain. Prevailing norms require defense attorneys to take affirmative action when their clients have nothing to lose and everything to gain.

It is well established that habeas courts cannot manufacture hypothetical defense strategies to justify trial counsel's complained-of performance. Yet the state courts did so in the instant case. Furthermore, the state courts misapply the plain error standard as the standard of prevailing norms per Strickland. Yet the two are not the same.

The State habeas court should have conducted an evidentiary hearing so Mr. Kie, though appointed post-conviction counsel could have examined his trial attorney under oath.

For the same reasons, the State courts misapplied Strickland with regard to trial counsel failing to seek a limiting instruction regarding the alleged drug transaction. Again, Mr. Kie had nothing to lose and everything to gain.

Exhaustion of State court remedies regarding Ground 1:

▸   **Direct Appeal:**

Did you raise this issue on direct appeal from the conviction to the Nevada Supreme Court?

___ Yes  ✓ No.  If no, explain why not:  *Ineffective assistance of counsel properly raised in state habeas petition per Nevada law*  .

▸   **First Post Conviction:**

Did you raise this issue in a petition for post conviction relief or state petition for habeas corpus?

✓ Yes  ___ No.  If no, explain why not:  _____

_____

If yes, name of court: *5th  J.D.C.*  date petition filed 07 / 31 / 2018.

Did you receive an evidentiary hearing? ___ Yes  ✓ No.  Did you appeal to the Nevada Supreme

Court? ✓ Yes  ___ No.  If no, explain why not:  _____

_____

If yes, did you raise this issue? ✓ Yes  ___ No.  If no, explain why not:  _____

_____

▸   **Second Post Conviction:**

Did you raise this issue in a **second** petition for post conviction relief or state petition for habeas corpus?

___ Yes  ___ No.  If yes, explain why:  *N/A*  _____

_____

If yes, name of court: _____  date petition filed ____ / ____ / ____.

Did you receive an evidentiary hearing? ___ Yes  ___ No.  Did you appeal to the Nevada Supreme

Court? ___ Yes  ___ No.  If no, explain why not:  _____

_____

If yes, did you raise this issue? ___ Yes  ___ No.  If no, explain why not:  _____

_____

▸   **Other Proceedings:**

Have you pursued any other procedure/process in an attempt to have your conviction and/or

sentence overturned based on this issue (such as administrative remedies)?  ___ Yes  ✓ No.  If yes,

explain:  _____

_____

**State concisely every ground for which you claim that the state court conviction and/or sentence is**

21

unconstitutional.  Summarize briefly the facts supporting each ground.  You may attach up to two extra pages stating additional grounds and/or supporting facts. You must raise in this petition all grounds for relief that relate to this conviction.  Any grounds not raised in this petition will likely be barred from being litigated in a subsequent action.

## GROUND 2

I allege that my state court conviction and/or sentence are unconstitutional, in violation of my ___Six th____ Amendment right to *effective assistance of counsel,* based on these facts:

*Trial counsel's opposition to State's Motion to Consolidate was deficient, causing prejudice to the Petitioner.*

Severance is always required where codefendants have "conflicting and irreconcilable defenses and there is danger that the jury will unjustifiably infer that this conflict alone demonstrates that both are guilty." *Marshall v. State*, 56 P.3d 376 118 Nev. 642, 646 (quoting *United States v. Haldeman*, 559 F.2d 31, 71 (D.C.Cir.1976)). In all analyses, the decisive factor must be "prejudice to the defendant," but prejudice to the state must also be considered. *Id.* However, joinder is never preferred where it compromises "a defendant's right to a fair trial." *Id.* Furthermore, prejudice can be inferred in cases where codefendants' defenses are "mutually exclusive when the core of the codefendant's defense is so irreconcilable with the core of [the defendant's] own defense that the acceptance of the codefendant's theory by the jury precludes acquittal of the defendant." *Marshall*, 118 Nev. at 646. Moreover, this duty exists continually throughout trial, meaning that should the reason for a severance become ripe at a time later than the filing of an initial Motion to Sever, the Court must sever the matter. *See* Id. Additionally, misjoinder requires reversal if it "has a substantial and injurious effect on the jury. Id. at 647.

Furthermore, *Zafiro v. United States* indicates that a harm to any specific trial right of a defendant indicates the trial court should grant a Motion to Sever. 506 U.S. 534, 113 S.Ct. 933, 122 L.Ed.2d 317 (1993). In *Zafiro*, petitioner did not meet the burden for reversal based on misjoinder, as he could not articulate a specific instance of prejudice. *Id*. However, severance should be granted if joinder would "prevent the jury from making a reliable judgment about guilt or innocence. *Zafiro*, 506 U.S. at 539. Importantly, *Zafiro* noted that specific prejudice may occur where "exculpatory evidence that would be available to a defendant tried alone were unavailable in a joint trial."*Id*. Finally, where any individual prejudicial circumstance does not by itself rise to the prejudice needed for misjoinder, error may be cumulated. *Chartier*, 124 Nev. 767.

Here, Mr. Kie's inability to cross-examine Mr. Eagles about the nature of the narcotics transaction precluded him from mounting any defense to the state's prejudicial claims of drug sales against him. Even if, *arguendo*, the state needed to proffer evidence of the transaction as Res Gestae evidence to tell a complete story, this strategy effectively allowed the state to repeatedly cast Mr. Kie not only as a drug dealer, but also as a drug dealer who used narcotics in this instance to pay Mr. Eagles to harm Mr. McKinney.                          This was particularly prejudicial as Mr. Kie had no effective means of rebutting this point, as he was unable to compel his codefendant to testify.

Trial counsel did file a written opposition to the State's pre-trial motion to consolidate the case against Mr. Eagles into Petitioner's case (See Exhibit 6) However, he filed that Opposition in Mr. Eagles' case, not Mr. Kie's (which lead to some confusion for post-conviction counsel and the state habeas court).

Trial counsel's opposition essentially argues that Mr. Kie would be prejudiced by sitting

23

next to Mr. Eagles at the same defense table because "[a] jury will quickly look at Kie and Eagles in the same case as working together..." They will be looked at as co-conspirators by that fact alone."[2]

Absent from trial counsel's Opposition is any mention of Mr. Kie's need to examine — either direct or cross — Mr. Eagles.

For example, if Mr. Eagles were to have testified that the hand-to-mouth handshake was not a drug transaction, such would have been beneficial to Mr. Kie. Especially if Mr. Eagles would have explained the handshake — perhaps the two individuals belonged to different chapters of a college fraternity, and this particular handshake was unique to that fraternity.

Or perhaps it was a drug transaction Assuming arguendo that the handshake was a drug transaction between Mr. Kie and Mr. Eagles, Mr. Eagles may have testified that the transaction was a simple drugs-for-money transaction. Had he done so, Mr. Kie would have likely been acquitted of all the charges against him — the crux of the State's theory being Mr. Kie provided drugs in exchange for Mr. Eagles attacking Mr. McKinney.

Neither Mr. Kie nor Mr. Eagles were charged with a drug offense in this case. So, proffering evidence that the transaction was a simple drugs-for-money transaction would have been a sound defense strategy — certainly a much better one than defense counsel implying that the individual putting his hand to his mouth and shaking Mr. Eagles' hand in the first place wasn't Mr. Kie, which is what trial counsel did.

However, since Mr. Kie could not compel Mr. Eagles to testify at their joint trial, these defenses were not available to him.

Furthermore, since the state habeas court did not conduct an evidentiary hearing, we do not know why trial counsel went with the that's-not-my-client-on-the-video defense over arguing that Mr. Kie had engaged in a simple drugs-for-money transaction, for which he was not being charged and which carries a significantly smaller penalty than the charges Mr. Kie was facing. In light of the testimonial evidence against Mr. Kie, the latter seems the obvious choice.

It seems that trial counsel settled on his defense strategy because the state's

motion was granted. Indeed, only either Mr. Eagles or
Mr. Kie himself could have testified to the true
nature of the alleged transaction, be it a fraternity
handshake or a drug deal. Had Mr. Kie testified,
he would have been subject to cross-examination.
But, to borrow a metaphor, Mr. Kie could have
had his cake and ate it too by placing Mr. Eagles
on the stand. Yet trial counsel's deficient
Opposition, or alternatively, his failure to file a
Motion to Severe during the trial, prejudiced
Mr. Kie from presenting this defense theory.

///

///

///

Exhaustion of state court remedies regarding Ground 2:
• Direct Appeal

Did you raise this issue on direct appeal from the conviction to the Nevada Supreme Court?
___ Yes ✓ No. If no, explain why not: _Ineffective Assistance of Counsel_
_properly raised in State habeas petition per Nevada law_.

▸ **First Post Conviction:**

Did you raise this issue in a petition for post conviction relief or state petition for habeas corpus?
✓ Yes ___ No. If no, explain why not: _____

If yes, name of court: ___8th J.D.C.___ date petition filed _04_ / _31_ / _2015_.

Did you receive an evidentiary hearing? ___ Yes ✓ No. Did you appeal to the Nevada Supreme Court? ✓ Yes ___ No. If no, explain why not: _____

If yes, did you raise this issue? ___ Yes ✓ No. If no, explain why not: _please see_
_next page, 28 - 30._

▸ **Second Post Conviction:**

Did you raise this issue in a second petition for post conviction relief or state petition for habeas corpus?
___ Yes ___ No. If yes, explain why: ___N/A___

If yes, name of court: _____ date petition filed ___ / ___ / ___.

Did you receive an evidentiary hearing? ___ Yes ___ No. Did you appeal to the Nevada Supreme Court? ___ Yes ___ No. If no, explain why not: _____

If yes, did you raise this issue? ___ Yes ___ No. If no, explain why not: _____

▸ **Other Proceedings:**

Have you pursued any other procedure/process in an attempt to have your conviction and/or sentence overturned based on this issue (such as administrative remedies)? ___ Yes ✓ No. If yes, explain: _____

State concisely every ground for which you claim that the state court conviction and/or sentence is unconstitutional. Summarize briefly the facts supporting each ground. You may attach up to two

## Regarding the Exhaustion of Ground 2

The Respondent can waive the exhaustion requirement. See 28 U.S.C. § 2254 (b)(3)(2018). "However, a State shall not be deemed to have waived the exhaustion requirement ... unless the State, through counsel, expressly waives the requirement." 49 Geo. L.J. Ann. Rev. Crim. Proc. 1689 (2020)(internal citations omitted).

Absent such a waiver, Ground 2 herein may be considered procedurally barred. "A petitioner can overcome the procedural bar only by demonstrating either (1) cause for the procedural default and actual prejudice as a result of the alleged violation of federal law, or (2) that failure to review the claims will result in a fundamental miscarriage of justice." Id. at 1092-94 (internal citations omitted).

A petition can show cause by showing that his attorney was ineffective. This includes post-conviction counsel. See Brown v. Brown, 847 F.3d 502, 508-09 (7th Cir. 2017); Sullivan v. Sec'y, Fla. Dept. of Corr., 837 F.3d 1195, 1207 (11th Cir. 2016).

In Martinez v. Ryan, the Supreme Court articulated a "narrow exception" to its holding in Coleman v. Thompson, 501 U.S. 722 (1991), establishing that when state law requires claims of ineffective assistance of counsel to

be first raised at initial-review collateral proceeding, procedural default will not prevent a habeas court from hearing claims of ineffective assistance if the proceeding lacked effective counsel. Martinez, 566 U.S. 1, 17 (2012). This narrow exception applies only when the first occasion to raise an ineffective assistance of trial counsel claim occurs at the initial post-conviction proceeding. Id. at 16.

Such is the case here. Nevada law does not permit claims of ineffective assistance except for through post-conviction petitions for writ of habeas corpus. Specifically, Nevada defendants cannot raise same on direct appeal.

In this case, post-conviction counsel was ineffective because he mistakenly argued that trial counsel had not filed an Opposition to the State's Motion to Consolidate, when in fact counsel had done so — albeit in co-defendant Mr. Eagles' case, not petitioner's case. Nonetheless, trial counsel's Opposition was ineffective, and trial counsel was IAC for not filing a Motion to Severe during the trial.

Regardless, post-conviction counsel was ineffective for failing to understand this issue. As a result, the ground was denied by the State habeas court

Subsequently, the same state post-conviction counsel — appointed counsel — prosecuted petitioner's state appeal of the denial of the writ. That counsel failed to raise Ground 2 herein on appeal. That also was ineffective assistance.

As such, Petitioner humbly submits to this Court that these facts satisfy cause regarding any presumptive procedural default.

"To establish prejudice, a petitioner must show not merely that the errors at his trial created a possibility of prejudice, but that they worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." 49 Geo L.J. Ann Rev Crim Proc 1098 (2020)[internal citations omitted].

In this case, Mr. Kie was actually and substantially denied his constitutional right to call Mr. Eagles to the witness stand to testify as described in this Petition. Indeed, the "entire trial" would have been substantially different if Petitioner did not have a co-defendant. Trial strategy would have been substantially different.

As such, Petitioner humbly submits to this Court that these facts satisfy prejudice.

extra pages stating additional grounds and/or supporting facts. You must raise in this petition all grounds for relief that relate to this conviction. Any grounds not raised in this petition will likely be barred from being litigated in a subsequent action.

## GROUND 3

I allege that my state court conviction and/or sentence are unconstitutional, in violation of my _____Sixth_____ Amendment right to _effective assistance of counsel,_ based on these facts:

_____Trial Counsel prejudiced Mr. Kie by failing to communicate with him concerning the video surveillance.

Inherent within the right to counsel is the right to communicate with said counsel. This court has held that failure to communicate with a client warrants disciplinary action. *McNelton v. State*, 115 Nev. 396, 411, 990 P.2d 1263, 1273 (1999) (quoting *State Bar of Nevada v. Schreiber*, 98 Nev. 464, 464, 653 P.2d 151, 151 (1982).

Here, trial counsel was ineffective for failing to communicate with Mr. Kie regarding evidence central to his ultimate conviction. Mr. Kie claims that despite his attempts to view the surveillance video, it was not provided to him nor viewed with him by counsel.     As stated above, the state extensively used the surveillance video against Mr. Kie, particularly to establish the existence of the narcotics transaction as his purported payment to Mr. Eagles.

However, despite Mr. Kie's requests to view the surveillance to make an informed decision whether to plead "Guilty," he was provided with no such opportunity, and was effectively left without crucial information concerning the state's evidence. Given that he was in custody during the pendency of this case, and represented by counsel, there was virtually no way in which Mr. Kie could have acquired such evidence on his own. As such, it was ineffective for counsel to provide no means by which Mr. Kie could view the evidence against him, as consideration of such evidence was central to whether the proposed negotiation was in his best interest.

That Mr. Kie suffered prejudice from this is clear, as his inability to view the video precluded him from voluntarily choosing between proceeding to trial and entering negotiations. Mr. Kie claims that he requested the surveillance and was precluded any opportunity from viewing it.     Prior to the start of trial, the state provided an amended offer to Mr. Kie as follows: to plead "guilty" to one (1) count of conspiracy robbery, and one (1) count of battery

with substantial bodily injury, for an aggregate sentence of three (3) to eight (8) years. Without the requisite knowledge of the state's case against him (the surveillance video), Mr. Kie could not make an informed decision that the deal would be in his best interest, given the video evidence that would be adduced against him at trial. Moreover, Mr. Kie ultimately received a much harsher sentence of an aggregate minimum term of one hundred sixty-three (163) months and a maximum term of four hundred eight (408) months. This meets the requirement that absent trial counsel's deficient performance, Mr. Kie would have likely obtained a different result.

The state habeas court identified the appropriate federal caselaw in adjudicating this claim, but both unreasonably applied that law and made an unreasonable determination of the facts in light of the state record. The state appellate court, in turn, affirmed the state habeas court's reasoning.

First, the state habeas court casted doubt as to whether Mr. Kie's allegation that his trial counsel did not show him the video before trial was true. Yet this allegation is not belied by the state court record. And since that allegation, if proven, could have warranted post-conviction relief, an evidentiary hearing was necessary.

Simply put, the state district court did not have the authority to not believe plausible allegations not belied by the record at the pleading stage — such a precedent would essentially render post-conviction habeas proceedings worthless.

Second, while the state habeas court correctly recognized that Mr. Kie saw the video evidence at the preliminary hearing, Mr. Kie should have been able to expand the record at a post-conviction habeas hearing. As a matter of law, merely being present at your own preliminary hearing does not satisfy the Sixth Amendment right to view the evidence against you with your attorney and to ask that attorney questions about that evidence, trial strategy and possible plea negotiations. Yet the habeas court erroneously summarily denied Petitioner's claim.

Had Mr. Kie been granted a state evidentiary hearing, he would have testified to the conversation he would have had with trial counsel. Specifically, even though Mr. Kie saw the video at the prelim, he didn't know if other scenes had been recorded that would have been exculpatory — such as him helping the victim recover from the attack. Second, Mr. Kie had no idea what trial counsel's strategy was — he didn't know trial counsel

was going to tell the jury "that's not my client." Had Mr. Kie known that was the plan, and absent any exculpatory material that may or may not have been on the video but not played in court, Mr. Kie would have absolutely accepted the State's offer; he also would have testified to the same at a state evidentiary hearing.

There is nothing in the state record to suggest that the State would have withdrawn the offer in light of intervening circumstances. The State made an offer, trial counsel communicated it, and had Mr. Kie known the specifics of the evidence against him and his attorney's defense strategy, he would have accepted the offer. Intervening circumstances are not plausible.

Likewise, the district court would have accepted the offer. The offer was lawful and provided significant consideration to both parties, and furthered the interests of public safety. It is well recognized that about ninety-five percent of felony convictions stem from plea deals — nothing in the record suggests the district court would have rejected this one.

Trial counsel was thus deficient for not showing Mr. Kie the video, and that deficiency caused Mr. Kie to receive a more severe sentence.

·Exhaustion of State court remedies regarding
Ground 3:

▸ **Direct Appeal:**

Did you raise this issue on direct appeal from the conviction to the Nevada Supreme Court?

___ Yes ✓ No. If no, explain why not: Ineffective Assistance of Counsel properly raised in state habeas petition per Nevada law.

▸ **First Post Conviction:**

Did you raise this issue in a petition for post conviction relief or state petition for habeas corpus?

✓ Yes ___ No. If no, explain why not: _____

_____

If yes, name of court: 8th J. D. C. _____ date petition filed 7 / 31 /2019.

Did you receive an evidentiary hearing? ___ Yes ✓ No. Did you appeal to the Nevada Supreme

Court? ✓ Yes ___ No. If no, explain why not: _____

_____

If yes, did you raise this issue? ✓ Yes ___ No. If no, explain why not: _____

_____

▸ **Second Post Conviction:**

Did you raise this issue in a second petition for post conviction relief or state petition for habeas corpus?

___ Yes ___ No. If yes, explain why: _____ N/A _____

_____

If yes, name of court: _____ date petition filed ___ / ___ / ___ .

Did you receive an evidentiary hearing? ___ Yes ___ No. Did you appeal to the Nevada Supreme

Court? ___ Yes ___ No. If no, explain why not: _____

_____

If yes, did you raise this issue? ___ Yes ___ No. If no, explain why not: _____

_____

▸ **Other Proceedings:**

Have you pursued any other procedure/process in an attempt to have your conviction and/or sentence overturned based on this issue (such as administrative remedies)? ___ Yes ✓ No. If yes, explain: _____

_____

State concisely every ground for which you claim that the state court conviction and/or sentence is unconstitutional. Summarize briefly the facts supporting each ground. You may attach up to two extra pages stating additional grounds and/or supporting facts. You must raise in this petition all grounds for relief that relate to this conviction. Any grounds not raised in this petition will likely be barred from being litigated in a subsequent action.

## GROUND 4

I allege that my state court conviction and/or sentence are unconstitutional, in violation of my _Fourteenth_ Amendment right to _a fundamentally fair trial_, based on these facts:

**Insufficient evidence supported the convictions against Mr. Kie.**

To determine whether a conviction was based on sufficient evidence, the court will inquire "whether, after viewing evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Mitchell v. State*, 192 P.3d 721, 727 (Nev. 2008).

In Nevada, a Conspiracy is an agreement between two or more persons for an unlawful purpose. *Thomas v. State*, 967 P.2D 1111,1122 (Nev. 1998). Furthermore, "Robbery is the unlawful taking of personal property from the person of another, or in the person's presence, against his or her will, by means of force or violence or fear of injury, . . . *NRS* 200.380(1)." Mere presence at the scene of a battery, without evidence of an agreement to take property from the person of another by force, is insufficient to support a claim for conspiracy to commit robbery. *Skinner v. Sheriff, Clark County*, 93 Nev. 340, 341, 566 P.2d 80, 80-81 (Nev. 1977).

Here, the evidence proffered against Mr. Kie shows no act on his part sufficient to indicate a conspiracy between himself and Mr. Eagles. The strongest piece of evidence against Mr. Kie is that Ms. Bacon testified that he returned to the bar after the incident and told people he spoke to his lawyer, and indicated he was "Free and clear" as long as the video didn't expressly show drugs changing hands. *Supp* at 400-403. This statement that Mr. Kie was worried about what the surveillance might show, considering that it might show him selling drugs, does not evidence a

conspiracy between Mr. Eagles and Mr. Kie. Similarly, that Mr. Kie appeared to touch hands with Mr. Eagles after touching hands to his mouth, was not evidence of a conspiracy. No evidence was proffered to show that the drug transaction was linked to the attack on Mr. McKinney, other than Detective Auschwiz' testimony that he did not view any money exchange hands, and that money exchanging hands was typical in such a transaction. *Supp* at 502. This was, again, mere speculation from Detective Auschwiz. Therefore, insufficient evidence exists to uphold the convictions against Mr. Kie, and Mr. Kie requests that this Court strike the Judgment of Conviction.

"The Constitution prohibits the criminal conviction of any person except upon proof of guilt beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 309 (1979) (citing In re Winsh_p, 397 U.S. 358 (1946)). "[T]he relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson, 443 U.S. at 319. "[T]he standard must be applied with explicit reference to the substantive elements of the criminal offense as defined by state law." Id. at 324 n. 16 [A] federal habeas court faced with a record of historical facts that supports conflicting inferences must presume — even if it does not affirmatively appear in the record — that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution." Id. at 326

In Nevada, a conspiracy is "an agreement between two or more persons for an unlawful purpose," and a co-conspirator "who knowingly does any act to further the object of a conspiracy, or otherwise participates therein, is criminally liable as a conspirator." Doyle v. State, 112 Nev 879, 894, 921 P.2d 901, 911 (1996) overruled on other grounds by Kaczmarek v. State, 120 Nev. 314, 91 P.3d 16 (2004)

The prosecution proffered evidence of Mr. kie allegedly handing Mr. Eagles drugs. The jury weighed that evidence and accepted that allegation. The State did not proffer evidence the alleged drugs were part of a conspiracy to beat and rob Mr. McKinney. None of the state's witnesses testified to knowing of any agreement between Mr. kie and Mr. Eagles None were aware of any agreement.

At best, the State convinced the jury that Mr. kie handed Mr. Eagles drugs. And at some point in the evening, Mr. Eagles attacked Mr. McKinnon. Even in a light most favorable to the State, these facts do not prove conspiracy. No rational trier of fact could disagree.

_Exhaustion of State Court remedies regarding Ground 4:_

> **Direct Appeal:**

Did you raise this issue on direct appeal from the conviction to the Nevada Supreme Court?

✓ Yes ___ No.  If no, explain why not: _____

_____.

> **First Post Conviction:**

Did you raise this issue in a petition for post conviction relief or state petition for habeas corpus?

✓ Yes ___ No.  If no, explain why not: _____

_____.

If yes, name of court: _8th J.D.C._ _____ date petition filed _7 / 31 / 2015_.

Did you receive an evidentiary hearing? ___ Yes ✓ No.  Did you appeal to the Nevada Supreme

Court? ✓ Yes ___ No.  If no, explain why not: _____

_____.

If yes, did you raise this issue? ✓ Yes ___ No.  If no, explain why not: _____

_____.

> **Second Post Conviction:**

Did you raise this issue in a second petition for post conviction relief or state petition for habeas corpus?

___ Yes ___ No.  If yes, explain why: _____ N/A _____

_____.

If yes, name of court: _____ date petition filed ___/___/___.

Did you receive an evidentiary hearing? ___ Yes ___ No.  Did you appeal to the Nevada Supreme

Court? ___ Yes ___ No.  If no, explain why not: _____

_____.

If yes, did you raise this issue? ___ Yes ___ No.  If no, explain why not: _____

_____.

> **Other Proceedings:**

Have you pursued any other procedure/process in an attempt to have your conviction and/or

sentence overturned based on this issue (such as administrative remedies)? ___ Yes ✓ No.  If yes,

explain: _____

_____.

**WHEREFORE,** petitioner prays that the court will grant him such relief to which he is entitled in this federal petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 by a person in state custody.

Daniel Riggs
(Name of person who wrote this
complaint if not Plaintiff)
(Who apologizes for his
poor handwriting)

Donald Kief Jr.
(Signature of Plaintiff)

5/13/21
(Date)

_____
(Signature of attorney, if any)

_____
_____
(Attorney's address & telephone number)


## DECLARATION UNDER PENALTY OF PERJURY

I understand that a false statement or answer to any question in this declaration will subject me to penalties of perjury. **I DECLARE UNDER PENALTY OF PERJURY UNDER THE LAWS OF THE UNITED STATES OF AMERICA THAT THE FOREGOING IS TRUE AND CORRECT.** See 28 U.S.C. § 1746 and 18 U.S.C. § 1621.

Executed at _Lovelock Correctional Center_ on _5/13/21_ .
                        (Location)                                      (Date)

Donald Kief Jr.
(Signature)

45225
(Inmate prison number)

40

Index of Exhibits

1. Order of Affirmance (of direct appeal) dated
12/15/2017, 4 pages.

2. Findings of Fact, Conclusions of Law, and Order
(state habeas court) dated 7/09/2019, 20 pages.

3. Order of Affirmance (of habeas petition) dated
8/10/2020, 4 pages.

4. Information (pertaining to other case no. C-16-313419-1)
dated 3/17/2016, 2 pages.

5. Amended Information (case no. C-16-313419-1) dated
07/07/2016, 2 pages.

6. Opposition to Motion to Consolidate (filed in case no.
C-16-312336-1) dated 05/04/2016, 3 pages

# EXHIBIT 1

## IN THE COURT OF APPEALS OF THE STATE OF NEVADA

DONALD KIE, JR.,
Appellant,
vs.
THE STATE OF NEVADA,
Respondent.

No. 71905

**FILED**

DEC 15 2017

ELIZABETH A. BROWN
CLERK OF SUPREME COURT
BY: _S. Young_
DEPUTY CLERK

*ORDER OF AFFIRMANCE*

Donald Kie, Jr. appeals from a judgment of conviction entered pursuant to a jury verdict finding him guilty of conspiracy to commit robbery, robbery, battery resulting in substantial bodily harm, and battery with intent to commit a crime. Eighth Judicial District Court, Clark County; Douglas Smith, Judge.

Bryan Eagles and another man accosted, robbed, and severely battered the victim outside a bar, breaking the victim's neck and leaving him temporarily paralyzed. They, along with a third man, also stole the victim's personal property and his truck. The incident was captured by surveillance cameras. Donald Kie, Jr., who was present before, during, and after the crime, approached Eagles shortly after Eagles finished beating the victim. Kie moved his hand to his mouth and then touched Eagles' right hand. Seconds after, Eagles transferred something from his right hand to his left. The State's theory of the case was that Kie was angry with the victim for threatening to tell Kie's wife of Kie's extramarital affairs, and Kie retaliated by conspiring with Eagles to beat the victim. The State

17-902676

argued Kie paid Eagles in drugs, and presented evidence that drugs are often transferred from mouth to hand.[1]

On appeal, Kie argues that the evidence was insufficient to show the conspiracy and support the convictions and that the district court abused its discretion by admitting evidence of the alleged drug transaction. We disagree.

Evidence is sufficient to support a verdict if "*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Higgs v. State*, 126 Nev. 1, 11, 222 P.3d 648, 654 (2010) (quoting *Rose v. State*, 123 Nev. 194, 202, 163 P.3d 408, 414 (2007)). A conspiracy is "an agreement between two or more persons for an unlawful purpose," and a co-conspirator "who knowingly does any act to further the object of a conspiracy, or otherwise participates therein, is criminally liable as a conspirator." *Doyle v. State*, 112 Nev. 879, 894, 921 P.2d 901, 911 (1996), *overruled on other grounds by Kaczmarek v. State*, 120 Nev. 314, 91 P.3d 16 (2004). · The Nevada Supreme Court has explained, "if a coordinated series of acts furthering the underlying offense is sufficient to infer the existence of an agreement, then sufficient evidence exists to support a conspiracy conviction." *Thomas v. State*, 114 Nev. 1127, 1143, 967 P.2d 1111, 1122 (1998) (internal quotation marks omitted). "[I]t is the function of the jury, not the appellate court, to weigh the evidence and pass upon the credibility of the witness." *Walker v. State*, 91 Nev. 724, 726, 542 P.2d 438, 439 (1975).

Our review of the record reveals sufficient evidence to establish guilt beyond a reasonable doubt as determined by a rational trier of fact.

---

[1]We do not recount the facts except as necessary to our disposition.

*See Jackson v. Virginia*, 443 U.S. 307, 318-19 (1979); *Origel-Candido v. State*, 114 Nev. 378, 381, 956 P.2d 1378, 1380 (1998). The State presented evidence supporting the charges, including the surveillance video and testimony by the victim, the bartender and the manager, a trauma nurse who treated the victim, and the detective assigned to the case. We conclude the jury could reasonably infer the essential elements of the conspiracy and other crimes charged from this evidence.

We next turn to Kie's second assertion of error. We review the district court's decision to admit evidence for an abuse of discretion. *Mclellan v. State*, 124 Nev. 263, 267, 182 P.3d 106, 109 (2008). NRS 48.035(3) permits the district court to admit evidence of another act or crime that "is so closely related to . . . [the] crime charged that an ordinary witness cannot describe the act in controversy or the crime charged without referring to the other act or crime." This exception is narrowly construed and limited to the express provisions of NRS 48.035(3). *Bellon v. State,* 121 Nev. 436, 444, 117 P.3d 176, 181 (2005); *Tabish v. State,* 119 Nev. 293, 307, 72 P.3d 584, 593 (2003). Because the statute refers to a witness's ability to describe, rather than explain, the charged crime, evidence of other acts may not be admitted under NRS 48.035(3) "to make sense of or provide a context for a charged crime." *Weber v. State,* 121 Nev. 554, 574, 119 P.3d 107, 121 (2005).

Here, the State charged Kie with conspiracy. "Conspiracy is seldom susceptible of direct proof and is usually established by inference from the conduct of the parties." *Thomas*, 114 Nev. at 1143, 967 P.2d at 1122 (internal quotation marks omitted). In this case, the State could not elicit testimony of the crime of conspiracy without referencing the facts of the alleged drug transaction, as that transaction was central to establish

the inferences supporting the conspiracy.  The evidence was therefore admissible res gestae evidence, and the district court did not abuse its discretion by admitting this evidence.[2]  Accordingly, we

ORDER the judgment of the district court AFFIRMED.


_____, C.J.
Silver

_____, J.
Tao

_____, J.
Gibbons


cc:   Hon. Douglas Smith, District Judge
      Benjamin Durham Law Firm
      Attorney General/Carson City
      Clark County District Attorney
      Eighth District Court Clerk

---

[2]Though not raised by the parties, we note Kie failed to file below an opposition to the State's motion to admit the evidence, thereby consenting to the admission of the evidence. *See* EDCR 2.20(e) (stating that failure to file a written opposition will be construed as an admission that the motion has merit and should be granted).

# EXHIBIT 2



Electronically Filed
7/11/2019 12:51 PM
Steven D. Grierson
CLERK OF THE COURT

NEO

# DISTRICT COURT

# CLARK COUNTY, NEVADA

| | |
|---|---|
| DONALD KIE, JR, | Case No: A-18-778622-W |
| Petitioner, | Dept No: IX |
| vs. | |
| RENEE BAKER, WARDEN; ET AL, | **NOTICE OF ENTRY OF FINDINGS OF FACT,** |
| Respondent, | **CONCLUSIONS OF LAW AND ORDER** |

**PLEASE TAKE NOTICE** that on July 9, 2019, the court entered a decision or order in this matter, a true and correct copy of which is attached to this notice.

You may appeal to the Supreme Court from the decision or order of this court. If you wish to appeal, you must file a notice of appeal with the clerk of this court within thirty-three (33) days after the date this notice is mailed to you. This notice was mailed on July 11, 2019.

STEVEN D. GRIERSON, CLERK OF THE COURT

*/s/ Debra Donaldson*
Debra Donaldson, Deputy Clerk

·

## CERTIFICATE OF E-SERVICE / MAILING

I hereby certify that on this 11 day of July 2019, I served a copy of this Notice of Entry on the following:

☑  By e-mail:
Clark County District Attorney's Office
Attorney General's Office – Appellate Division-

☑  The United States mail addressed as follows:
Donald Kie # 45225
1200 Prison Rd.
Lovelock, NV 89419

*/s/ Debra Donaldson*
Debra Donaldson, Deputy Clerk

-1-

Electronically Filed
7/9/2019 4:25 PM
Steven D. Grierson
CLERK OF THE COURT

1  FCL
   STEVEN B. WOLFSON
2  Clark County District Attorney
   Nevada Bar #001565
3  JONATHAN E. VANBOSKERCK
   Chief Deputy District Attorney
4  Nevada Bar #006528
   200 Lewis Avenue
5  Las Vegas, Nevada 89155-2212
   (702) 671-2500
6  Attorney for Plaintiff

7              DISTRICT COURT
8            CLARK COUNTY, NEVADA

9  THE STATE OF NEVADA,

10            Plaintiff,

11     -vs-                         CASE NO:   C-16-312386-2

12  DONALD KIE,                     DEPT NO:   IX
    #1063620
13
              Defendant.
14

15        FINDINGS OF FACT, CONCLUSIONS OF
                LAW, AND ORDER
16
       DATE OF HEARING:  MAY 20, 2019
17       TIME OF HEARING:  8:00 AM

18        THIS CAUSE having come on for hearing before the Honorable CRISTINA SILVA,

19  District Judge, on the 20th day of May, 2019, the Petitioner not being present,

20  REPRESENTED BY WALEED ZAMAN, the Respondent being represented by STEVEN B.

21  WOLFSON, Clark County District Attorney, by and through ALEX CHEN, Chief Deputy

22  District Attorney, and the Court having considered the matter, including briefs, transcripts,

23  arguments of counsel, and documents on file herein, now therefore, the Court makes the

24  following findings of fact and conclusions of law:

25        **FINDINGS OF FACT, CONCLUSIONS OF LAW**

26             **PROCEDURAL HISTORY**

27        On March 29, 2016, the State filed an Amended Information charging Petitioner with

28  Conspiracy to Commit Robbery, Robbery with Use of a Deadly Weapon, Battery with

A-18-778622-W   CASE NO: C-16-312386-2

1  Substantial Bodily Harm, and Battery with Intent to Commit a Crime. On May 5, 2016,

2  Petitioner's and his co-defendant's cases were consolidated. On the same day, the State filed

3  an Amended Information charging Petitioner and co-defendant with Conspiracy to Commit

4  Robbery, Robbery, Battery with Substantial Bodily Harm, Battery with Intent to Commit a

5  Crime, and Conspiracy to Commit Grand Larceny Auto. On June 6, 2016, the State filed a

6  Motion to Admit Res Gestae Evidence and/or Evidence of Other Crimes. On June 20, 2016,

7  the Court granted the motion. On June 20, 2016, the State filed a Second Amended Information

8  charging Petitioner and his co-defendant with Conspiracy to Commit Robbery, Robbery,

9  Battery with Substantial Bodily Harm, and Battery with Intent to Commit a Crime. Petitioner's

·10  trial began on the same day. On June 22, 2016, the jury found Petitioner guilty on all counts.

11     On November 21, 2016, Petitioner was sentenced as follows: count one – 24 to 60

12  months; count two – 72 to 180 months, running consecutively to count one; count three – 19

13  to 48 months, running consecutively to count two; and count four – 48 to 120 months, running

14  consecutively to count three. The Judgment of Conviction was filed on December 1, 2016.

15     Petitioner filed a Notice of Appeal on December 1, 2016. On December 15, 2017, the

16  Nevada Court of Appeals affirmed his conviction. Kie v. State, No. 71905, Order of

17  Affirmance (Dec. 15, 2017).

18     Petitioner filed a Petition for Writ of Habeas Corpus on February 25, 2019. The State

19  responded on April 19, 2019. The Court denied the petition on May 20, 2019.

20                                    **STATEMENT OF FACTS**

21     On November 8, 2015, victim Joseph McKinney parked his truck at the Fifth Avenue

22  Pub in Las Vegas, Nevada. Exhibit A: Supplement to Petition for Writ of Habeas Corpus, at

23  326-27, 330-31. As McKinney exited his truck, Petitioner's co-defendant Eagles and "Gyro"

24  surrounded McKinney, and one of the men punched McKinney in the head from behind,

25  knocking him to the ground. Supp. at 331-32. Petitioner's co-defendant and Gyro were

26  captured on the bar's surveillance footage stomping and kicking McKinney while he was on

27  the ground. Supp. at 411. Petitioner's co-defendant then went through McKinney's pockets

28  and stole his shoes from his feet. Id. Several individuals, including Petitioner and his co-

2

1    defendant, approached McKinney while he was on the ground. Supp. at 412-15. McKinney

2    recalled someone demanding the keys to his car and then reaching into his pockets to take

3    them. Supp. at 333-34.

4         Petitioner was outside the bar shortly after Petitioner's co-defendant and Gyro attacked

5    McKinney. Supp. at 409-10. Less than a minute after the attack, Petitioner wiped his hand near

6    his mouth and then shook hands with his co-defendant. Supp. at 296, 422-23. His co-defendant

7    then transferred an item from the hand that touched Petitioner to his other hand. Supp. at 423.

8    Petitioner's co-defendant was not seen giving Petitioner anything in return. Supp. at 423-24.

9    Fifth Avenue Pub bartender Angela Bacon frequently observed narcotics being sold from the

10   bar. Supp. at 422-23. Typically, individuals at the bar would reach up to their mouths, wipe

11   their hands away, and then shake hands with the purchaser. Id. In those past transactions,

12   however, the customer would then be seen passing something back to the individual providing

13   the narcotics. Supp. at 422-24.

14        McKinney told police that Petitioner stood over and laughed at him while he was on

15   the ground. Supp. at 342, 369. One to two days prior to the attack, McKinney and Petitioner

16   had a disagreement while in McKinney's truck and McKinney brought up that he did not agree

17   with how Petitioner treated his wife. Supp. at 352.

18        Two days after the attack, Las Vegas Metropolitan Police Department (LVMPD)

19   Detective Jason Auschwitz went to the bar to get surveillance footage. Supp. at 399-400.

20   Petitioner was at the bar and became nervous after the detective left. Supp. at 401-02. A few

21   days after, Petitioner told Bacon that he had talked to his lawyer who told him he did not have

22   anything to worry about so long as the video looked like he was just wiping his mouth and

23   shaking someone's hand. Supp. at 402. Petitioner also explained that McKinney was attacked

24   because, during the argument in McKinney's truck, McKinney threatened to tell Petitioner's

25   wife that he was sleeping with other women, and that Petitioner "wasn't going to have that."

26   Supp. at 403-04.

27

28

3

## ANALYSIS

### I. PETITIONER'S CLAIMS THAT COUNSEL WAS INEFFECTIVE FOR FAILING TO OBJECT TO EVIDENCE, FILE RESPONSIVE MOTIONS, AND COMMUNICATE FAIL

The court assesses ineffective assistance of counsel claims under the Strickland v. Washington, 466 U.S. 668, 104 S. Ct. 2052 (1984), two-prong standard. Molina v. State, 120 Nev. 185, 190-91, 87 P.3d 533, 537 (2004). "[T]here is no reason for a court deciding an ineffective assistance claim to approach the inquiry in the same order or even to address both components of the inquiry if the defendant makes an insufficient showing on one." Strickland, 466 U.S. at 697, 104 S. Ct. at 2069.

A petitioner arguing ineffective assistance of counsel must assert that defense counsel's performance fell below the professional standard and that the petitioner was prejudiced. Molina, 120 Nev. at 190, 87 P.3d at 537. There is a strong presumption that counsel's actions were within the bounds of reasonable assistance. Id. Prejudice requires a showing that if the error did not occur, then the outcome would have been different. Kirksey v. State, 112 Nev. 980, 988, 923 P.2d 1102, 1107 (1996). "Effective counsel does not mean errorless counsel, but rather counsel whose assistance is '[w]ithin the range of competence demanded of attorneys in criminal cases.'" Jackson v. Warden, 91 Nev. 430, 432, 537 P.2d 473, 474 (1975).

A petitioner is not entitled to relief if his factual allegations and claims are belied by the record. Hargrove v. State, 100 Nev. 498, 503, 686 P.2d 222, 225 (1984). A claim is belied if the record contradicts the factual allegation. Mann v. State, 118 Nev. 351, 354, 46 P.3d 1228, 1230 (2002). "Bare" and "naked" allegations also do not entitle a defendant to relief. Hargrove, 100 Nev. at 502, 686 P.2d at 225.

#### A. Counsel's failure to object to res gestae evidence does not entitle Petitioner to relief

Petitioner claims that his counsel was ineffective because he did not object to res gestae evidence and that prejudiced the jury against him. Petition at 7-11. Generally, evidence of other acts is inadmissible where it is used to show that a defendant has the propensity to

4

commit the crime charged. NRS 48.045(2). However, evidence of an uncharged crime "which is so closely related to an act in controversy or a crime charged that an ordinary witness cannot describe the act in controversy or the crime charged without referring to the other act or crime" is admissible. NRS 48.035(3). This long-standing principle of res gestae provides that the State is entitled to present, and the jury is entitled to hear, "the complete story of the crime." Allen v. State, 92. Nev. 318, 549 P.2d 1402 (1976). The Nevada Supreme Court set forth the principle in Dutton v. State, 94 Nev. 461, 581 P.2d 856 (1978), when it explained:

> The State is entitled to present a full and accurate account of the circumstances of the commission of the crime, and if such an account also implicates Defendant or Defendants in the commission of other crimes for which they have not been charged, the evidence is nevertheless admissible.

(quoting State v. Izatt, 96 Idaho 667, 534 P.2d 1107, 1110 (1975)).

Contrary to Petitioner's argument, a hearing on the admissibility of the evidence at issue under Petrocelli v. State, 101 Nev. 46, 692 P.2d 503 (1985), was not required. The Nevada Supreme Court has held that where the doctrine of res gestae is invoked:

> [The] determinative analysis is not a weighing of the prejudicial effect of evidence of other bad acts against the probative value of that evidence...*the controlling question is whether witnesses can describe the crime charged without referring to related uncharged acts*. If the court determines that testimony relevant to the charged crime cannot be introduced without reference to uncharged acts, it must not exclude the evidence of the uncharged acts.

State v. Shade, 111 Nev. 887, 894, 900 P.2d 327, 331 (1995) (emphasis added). Indeed, res gestae evidence cannot be excluded solely because of its prejudicial nature. Shade, 111 Nev. at 894, n.1, 900 P.2d at 331, n.1. The decision to admit or exclude evidence is within the sound discretion of the trial court and will not be disturbed unless manifestly wrong. Wesley v. State, 112 Nev. 503, 512, 916 P.2d 793, 799 (1996).

Petitioner cannot demonstrate that counsel was ineffective because the evidence was properly admitted. Petitioner and the victim had past transactions, and at some point there was

5

1   tension between them. Supp. at 344, 352. Then, Petitioner paid his co-defendant to beat up the

2   victim. Supp. at 497-501. Video surveillance showed a drug transaction between Petitioner

3   and his co-defendant that occurred moments after the beating. Supp. at 421-24, 497-501. The

4   bartender on duty the night of the beating said that she saw similar drug transactions in the

5   past and based on that experience, the transfer looked like a drug transaction. Supp. at 421-24.

6   The State brought this evidence in to show the connection between Petitioner and co-defendant

7   and their roles in the victim's beating. The evidence allowed the jury to infer that Petitioner

8   paid his co-defendant for beating McKinney. It also gave context to Petitioner's statement to

9   the bartender that Petitioner did not have to worry as long as the video showed he was only

10  wiping his mouth and shaking someone's hand. Supp. at 402. Overall, this evidence was

11  crucial in providing the jury with a complete picture of the crime. Thus, the evidence was

12  properly admitted under res gestae.

13          Also, counsel explained why he did not file an opposition. When the court considered

14  the motion, counsel explained that he did not file an opposition because the State was going to

15  present evidence that was already presented at the preliminary hearing and would not go

16  beyond that, unless the defense opened the door. Supp 106-07. Thus, Petitioner cannot

17  demonstrate that his counsel's actions fell below a reasonable standard.

18          Petitioner's claim that he was prejudiced by not having a Petrocelli hearing or limiting

19  instruction also fails. NRS 48.045(2) provides that, "[e]vidence of other crimes, wrongs or acts

20  is not admissible to prove the character of a person in order to show that the person acted in

21  conformity therewith." However, such evidence is admissible "for other purposes," including

22  establishing intent, motive, or knowledge. See id. Evidence is not a prior bad act unless the

23  evidence elicited speaks to chargeable collateral offenses. See Salgado v. State, 114 Nev. 1039,

24  1042-43, 968 P.2d 324, 326-27 (1998) (explaining that cases in which the evidence does not

25  implicate prior bad acts or collateral offense on the defendant's part, a Petrocelli hearing is not

26  required); Colon v. State, 113 Nev. 484, 494, 938 P.2d 714, 720 (1997) (Petrocelli hearing not

27  required when State elicited testimony that defendant knew where marijuana was grown in her

28  building, associated with drug dealers and bailed known drug user out of jail).

To admit evidence of a prior bad act, the State must first seek a hearing outside the presence of the jury under Petrocelli, 101 Nev. 46, 692 P.2d 503. Following a Petrocelli hearing, evidence of a defendant's prior bad acts will be admissible where the district court determines, "that: (1) the prior bad act is relevant to the crime charged and for a purpose other than proving the defendant's propensity, (2) the act is proven by clear and convincing evidence, and (3) the probative value of the evidence is not substantially outweighed by the danger of unfair prejudice." Bigpond v. State, 128 Nev. ___, 270 P.3d 1244, 1250 (2012).

The record from the preliminary hearing and the trial are sufficient to demonstrate the admissibility of the complained-of evidence. See McNelton v. State, 115 Nev. 396, 405, 990 P.2d 1263, 1269 (1999) (holding that a district court's failure to conduct a Petrocelli hearing prior to the admission of bad acts testimony does not require reversal of a defendant's subsequent conviction if: "(1) the record is sufficient to determine that the evidence is admissible under [the modified standard set forth in Bigpond, supra]; or (2) the result would have been the same if the trial court had not admitted the evidence."). First, the narcotics transaction evidence was relevant to the crimes charged and for a purpose other than proving the defendant's propensity. The Nevada Supreme Court has held that evidence of prior bad acts and criminal association between co-conspirators can lend background to a criminal relationship and refute claims that the defendants did not have knowledge of the conduct giving rise to the conspiracy charges. Fields v. State, 125 Nev. 785, 792-93, 220 P.3d 709, 714 (2009). A conspiracy is defined as an agreement or mutual understanding between two or more people to commit a crime. NRS 199.480; Johnson v. Sheriff, 91 Nev. 161, 163, 532 P.2d 1037, 1038 (1975). To be guilty of conspiracy, a defendant must intend to commit, or to aid the commission of, the specific crime agreed to. Bolden, 121 Nev. 912-13, 124 P.3d at 194. "Evidence of a coordinated series of acts furthering the underlying offense is sufficient to infer the existence of an agreement and support a conspiracy conviction." Id. (quoting Garner v. State, 116 Nev. 770, 780, 6 P.3d 1013, 1020 (2000)). Here, the attack on McKinney was effectuated by Eagles and Gyro, but was ordered by Petitioner based on a prior dispute between Petitioner and McKinney. As such, the evidence of a narcotics transaction shortly after the

7

1    attack and the consistency with observed drug deals is highly relevant to Petitioner's intent,
2    motive, and knowledge. Further, the evidence gives background to the criminal relationship
3    between Eagles and Petitioner.

4        Second, the act was proven by clear and convincing evidence. The jury received
5    sufficient testimony from Angela Bacon, watched the transaction on the surveillance video,
6    and heard that Petitioner acknowledged that the transaction was incriminating because it was
7    linked to the reason why McKinney was attacked. Thus, the act was proven by clear and
8    convincing evidence.

9        Third, the evidence was not significantly more prejudicial than probative; the evidence
10   was highly relevant to Petitioner's and Eagles' motive and intent, as well as the presence of a
11   conspiracy. Both defendants were charged in this case with Conspiracy to Commit Robbery,
12   Robbery, Battery with Substantial Bodily Harm, and Battery with Intent to Commit a Crime.
13   Supp. at 98. The complained-of evidence was essentially evidence of a low-level drug deal,
14   which occurred mere moments after the attack on McKinney. The purpose of the evidence was
15   to establish that Eagles' attack was paid for by Petitioner, thus providing highly relevant
16   evidence of the conspiracy. Moreover, Angela Bacon's testimony was highly sanitized and
17   limited to her recognition of the handshake as a hand-to-hand narcotics transaction because
18   she had seen similar transactions into the past. The State did not elicit additional detail about
19   the extent of either defendant's drug use or selling. Also, the evidence related to the same
20   evening as the charged conduct, rather than a separate event or arrest.

21       Finally, the testimony regarding the drug deal provided context to Petitioner's statement
22   that he had nothing to worry about, which was evidence of consciousness of guilt and the
23   conspiracy. See Supp. at 402-03. Accordingly, the evidence of the narcotics transaction was
24   not significantly more prejudicial than probative and was properly admitted under the modified
25   Bigpond standard. McNelton, 115 Nev. at 405, 990 P.2d at 1269.

26       During the trial, Angela Bacon testified that she had seen similar transactions in the
27   past and recognized Petitioner's movements as similar. Supp. at 422-24. The State argued that
28   the evidence was evidence of a conspiracy, not that Appellant was guilty because he had sold

8

1  drugs in the past. Thus, no limiting instruction was warranted. Additionally, because the
2  comments were limited and paled in comparison to the evidence relating to the charged
3  offenses, Petitioner cannot show any prejudice as a result of the admission of the narcotics
4  transaction evidence.

5      Further, Petitioner cannot demonstrate prejudice because the Court of Appeals found
6  that this evidence was admissible. Kie v. State, No. 71905, Order of Affirmance at 3-4 (Dec.
7  15, 2017). The Court of Appeals held:

8          In this case, the State could not elicit testimony of the crime of
9          conspiracy without referencing the facts of the alleged drug
           transaction, as that transaction was central to establish the
10         inferences supporting the conspiracy. The evidence was therefore
           admissible res gestae evidence, and the district court did not abuse
11         its discretion by admitting this evidence.
12

13  Id. The prejudice analysis for direct appeal plain error is the same as prejudice required for an
14  ineffective assistance of counsel claim. Gordon v. United States, 518 F.3d 1291, 1300 (11th
15  Cir. 2008) ("It is true that the 'substantial rights' standard of plain error review is identical to
16  the 'prejudice' standard of an ineffective assistance of counsel claim"). Thus, Petitioner cannot
17  demonstrate prejudice. This claim is denied.

18      **B. Counsel's alleged failure to communicate with Petitioner about the video**
19      **surveillance is meritless**
20      Petitioner claims that his attorney was ineffective because counsel did not communicate
21  with him about the surveillance video and so Petitioner could not make an informed decision
22  whether to plead guilty. Petition at 11-12.

23      A defendant is entitled to effective assistance of counsel in the plea-bargaining process,
24  and in determining whether to accept or reject a plea offer. Lafler v. Cooper, ___ U.S. ___,
25  ___, 132 S. Ct. 1376, 1384 (2012); see also McMann v. Richardson, 397 U.S. 759, 771, 90 S.
26  Ct. 1441, 1449 (1970) (Constitution guarantees effective counsel when accepting guilty plea).
27  Similarly, a "defendant has the right to make a reasonably informed decision whether to accept
28  a plea offer." Turner v. Calderon, 281 F.3d 851, 880 (9th Cir. 2002) (quoting United States v.

9

1   Day, 969 F.2d 39, 43 (3rd Cir. 1992)). Importantly, the question is not whether "counsel's
2   advice [was] right or wrong, but . . . whether that advice was within the range of competence
3   demanded of attorneys in criminal cases." Id. (quoting McMann, 397 U.S. at 771, 90 S. Ct. at
4   1449). To establish a claim of ineffective assistance of counsel for advice regarding a guilty
5   plea, a defendant must show "gross error on the part of counsel." Id. Further, the Nevada
6   Supreme Court has held that a reasonable plea recommendation which hindsight reveals to be
7   unwise is not ineffective assistance. Larson v. State, 104 Nev. 691, 694, 766 P.2d 261, 263
8   (1988). Similarly, the fact that a defense tactic is ultimately unsuccessful does not make it
9   unreasonable. Id. Lastly, while it is counsel's duty to candidly advise a defendant regarding
10  whether or not it would be beneficial to accept a plea offer, the ultimate decision is the
11  defendant's. Rhyne, 118 Nev. at 8, 38 P.3d at 163.

12        Petitioner fails to show that counsel's actions were unreasonable. He provides only
13  bare, self-serving allegations that counsel never showed him the video. Also, Petitioner raised
14  the issue at the motion to consolidate hearing that he wanted to see his discovery. Recorder's
15  Transcript of Proceedings: Motion to Consolidate, filed November 28, 2016, in C-312386-1,
16  at 12-13. The Court told counsel to get a copy to Petitioner as soon as possible and counsel
17  said that he would do so. Id.

18        Petitioner also fails to demonstrate prejudice. The State and defense used the video in
19  questioning witnesses at the preliminary hearing (although the defense did not have its own
20  copy), where two witnesses testified about the contents of the video. Supp. at 8-9, 12-14, 31-
21  38. Petitioner was present for the preliminary hearing. Supp. at 3. Even if Petitioner did not
22  see the video prior to reviewing plea offers, he was aware of how the State was going to use
23  this evidence and what the video showed based on the preliminary hearing. So, Petitioner could
24  have assessed whether a prior offer was in his best interest. Petitioner also does not assert that
25  he would have pleaded guilty if he had seen the video. He has not shown that the outcome
26  would have been different. Thus, this claim is denied.

27

28

10

II.   **PETITIONER'S CLAIM THAT COUNSEL WAS INEFFECTIVE FOR FAILING TO CHALLENGE THE JOINDER OR MOVE TO SEVER IS MERITLESS**

Petitioner claims that counsel was ineffective for failing to move to sever or oppose consolidation. Petition at 12-14.

Consolidation was authorized by NRS 174.155, which states:

> The court may order two or more indictments or informations or both to be tried together if the offenses, and the defendants if there is more than one, could have been joined in a single indictment or information. The procedure shall be the same as if the prosecution were under such single indictment or information.

Further, NRS 173.115(1), governing joinder, states:

> 1. Two or more offenses may be charged in the same indictment or information in a separate count for each offense if the offenses charged, whether felonies or gross misdemeanors or both, are:
>    (a) Based on the same act or transaction; or
>    (b) Based on two or more acts or transactions connected together or constituting parts of a common scheme or plan.

The Nevada Supreme Court expounded on "connected together" by explaining that, "[w]e conclude that the groups of crimes charged and proven in this case are connected together because evidence of each group would have been relevant and admissible at separate trials of the other crimes." Weber v. State, 121 Nev. 554, 573 (2005).

To promote efficiency and equitable outcomes, Nevada law favors trying multiple defendants together. Jones v. State, 111 Nev. 848, 853, 899 P.2d 544, 547 (1995). A defendant is only entitled to a severed trial if he presents facts that sufficiently demonstrate that a joint trial would result in substantial prejudice. Rowland v. State, 118 Nev. 31, 44, 39 P.3d 114, 122 (2002) (citing NRS 174.165). "Generally, where persons have been jointly indicted they should be tried jointly, absent compelling reasons to the contrary." Id. (quotation marks omitted). Further, the court not only considers the potential prejudice to the defendant, but also prejudice to the State "resulting from two time-consuming, expensive and duplicitous trials."

11

1    Id. (quotation marks omitted); see also Lisle v. State, 113 Nev. 679, 688-89, 941 P.2d 459,

2    466 (1997), overruled on other grounds, Middleton v. State, 114 Nev. 1089, 1117 n.9, 968

3    P.2d 296, 315 n.9 (1998).

4    　　　Courts will find a compelling reason to try cases separately when it appears that a joint

5    trial will be unduly prejudicial to one defendant. See Bruton v. United States, 391 U.S. 123,

6    88 S. Ct. 1620 (1968); NRS 174.165. "A district court should grant a severance only if there

7    is a serious risk that a joint trial would compromise a specific trial right of one of the

8    defendants, or prevent the jury from making a reliable judgment about guilt or innocence."

9    Chartier v. State, 124 Nev. 760, 765, 191 P.3d 1182, 1185 (2008) (quoting Marshall v. State,

10   118 Nev. 642, 646, 56 P.3d 376, 378 (2002)). Further, as the Nevada Supreme Court has long

11   recognized that "some level of prejudice exists in a joint trial, error in refusing to sever joint

12   trials is subject to harmless-error review." Id. at 764–65, 191 P.3d at 1185. Accordingly, to

13   show prejudice from an improper joinder "requires more than simply showing that severance

14   made acquittal more likely; misjoinder requires reversal only if it has a substantial and

15   injurious effect on the verdict." Id. (quoting Marshall, 118 Nev. at 647, 56 P.3d at 379). Broad

16   allegations of prejudice are not enough to require severance. United States v. Baker, 10 F.3d

17   1374, 1389 (9th Cir. 1993).

18   　　　Petitioner cannot demonstrate that his counsel's actions fell below a reasonable

19   standard. Contrary to Petitioner's argument, Petitioner's counsel did oppose joinder. The State

20   filed a motion to consolidate on March 29, 2016. Petitioner's counsel filed an opposition on

21   May 4, 2016. The Court heard argument on May 5, 2016. Recorder's Transcript of

22   Proceedings: Motion to Consolidate, filed November 28, 2016, in C-312386-1. The State

23   pointed out at the motion to consolidate hearing that the defendants would have been charged

24   in the same Information except that the State was unaware of Petitioner's identity when the

25   Information charging Petitioner's co-defendant was filed. Id. at 3. The State argued that joinder

26   favored judicial economy and that Petitioner's counsel failed to demonstrate that a specific

27   trial right would be infringed or that there would be mutually-antagonistic defenses at trial. Id.

28   at 3-4. The State also argued that the same evidence would come in if there were separate

12

1  trials. Id. at 5-6. Petitioner's counsel argued that Petitioner would be prejudiced by having a
2  joint trial with his co-defendant because he was not easily identifiable on the video, there was
3  a lack of direct evidence, and Petitioner would be sitting with his co-defendant. Id. at 4-5. The
4  Court granted the motion to consolidate, finding that the allegations against both defendants
5  involved the same transaction, same witnesses, and same evidence. Id. at 11. Thus, Petitioner's
6  claim that counsel failed to oppose consolidation is belied by the record.

7      Also, Petitioner cannot demonstrate prejudice because joinder was appropriate in this
8  case. The victim, the bar manager, and the bartender all identified Petitioner and his co-
9  defendant on the surveillance video. Supp. at 275-76, 261-97, 307-08, 329-32, 342-43, 369,
10  388-90, 393-94, 397-98, 408-18. The victim testified that Petitioner stood over him and
11  laughed the night he was beaten, and the co-defendant was the attacker. Supp. at 329-32, 339-
12  43, 369. The victim and Petitioner had a disagreement a few days before the attack. Supp. at
13  344, 352. The bartender testified that she saw Petitioner touch his hand to his mouth and then
14  touch hands with his co-defendant. Supp. at 421-24. Based on her experience at the bar, this
15  looked like a drug transfer. Id. LVMPD Detective Auschwitz also testified that based on his
16  training and experience, it looked like a drug transaction. Supp. at 497-501. Thus, Petitioner's
17  claim is denied.

18  **III.   PETITIONER'S INSUFFICIENT EVIDENCE CLAIM FAILS**
19      **A. Petitioner's claim is waived**
20      Petitioner's insufficiency of the evidence complaint is a substantive claim. Petition at
21  14-15. Substantive claims should be brought on direct appeal. As such, Petitioner's claim is
22  waived. NRS 34.724(2)(a); NRS 34.810(1)(a); Evans v. State, 117 Nev. 609, 646-47, 29 P.3d
23  498, 523 (2001); Franklin v. State, 110 Nev. 750, 752, 877 P.2d 1058, 1059 (1994),
24  disapproved on other grounds by Thomas v. State, 115 Nev. 148, 979 P.2d 222 (1999).
25      **B. Petitioner cannot demonstrate good cause or prejudice**
26      To avoid procedural default, under NRS 34.810(3)(a), a defendant has the burden of
27  pleading and proving specific facts that demonstrate good cause for his failure to present his
28  claim in earlier proceedings or to otherwise comply with the statutory requirements, and that

13

1    he will be unduly prejudiced if the petition is dismissed. See Hogan v. Warden, 109 Nev. 952,

2    959–60, 860 P.2d 710, 715–16 (1993); Phelps v. Nevada Dep't of Prisons, 104 Nev. 656, 659,

3    764 P.2d 1303, 1305 (1988). "A court *must* dismiss a habeas petition if it presents claims that

4    either were or could have been presented in an earlier proceeding, unless the court finds both

5    cause for failing to present the claims earlier or for raising them again and actual prejudice to

6    the petitioner." Evans, 117 Nev. at 646-47, 29 P.3d at 523 (emphasis added).

7           i.  Petitioner cannot show good cause

8           "To establish good cause, appellants must show that an impediment external to the

9    defense prevented their compliance with the applicable procedural rule." Clem v. State, 119

10   Nev. 615, 621, 81 P.3d 521, 525 (2003) (emphasis added); see Hathaway v. State, 119 Nev.

11   248, 251, 71 P.3d 503, 506 (2003); Pellegrini, 117 Nev. at 887, 34 P.3d at 537. "A qualifying

12   impediment might be shown where the factual or legal basis for a claim was not reasonably

13   available at the time of default." Clem, 119 Nev. at 621, 81 P.3d at 525. The Court continued,

14   "appellants cannot manufacture good cause[.]" Id. at 621, 81 P.3d at 526. Examples of good

15   cause include interference by State officials and the previous unavailability of a legal or factual

16   basis. See Huebler, 128 Nev. Adv. Op. 19, 275 P.3d at 95. Clearly, any delay in the filing of

17   the petition must not be the fault of the petitioner. NRS 34.726(1)(a).

18          Petitioner has not established good cause for raising his sufficiency of the evidence

19   claim again. All of the facts and law necessary to raise this claim were available for appeal

20   and he has already raised this claim on appeal. Thus, Petitioner fails to demonstrate good cause

21   for raising it again.

22          ii.  Petitioner cannot show prejudice

23          To establish prejudice, a defendant must show "'not merely that the errors of [the

24   proceedings] created possibility of prejudice, but that they worked to his actual and substantial

25   disadvantage, in affecting the state proceedings with error of constitutional dimensions.'"

26   Hogan, 109 Nev. at 960, 860 P.2d at 716 (quoting United States v. Frady, 456 U.S. 152, 170,

27   102 S. Ct. 1584, 1596 (1982)). "Bare" and "naked" allegations are not sufficient to warrant

28

14

1    post-conviction relief, nor are those belied and repelled by the record. <u>Hargrove</u>, 100 Nev. at,
2    502, 686 P.2d at 225.

3        Petitioner cannot demonstrate prejudice because Petitioner raised this claim on appeal
4    and the Court of Appeals found that there was sufficient evidence. <u>Kie v. State</u>, No. 71905,
5    <u>Order of Affirmance</u> at 2-3 (Dec. 15, 2017). The Court of Appeals' decision is the law of the
6    case and cannot be disturbed. <u>Hall v. State</u>, 91 Nev. 314, 315, 535 P.2d 797, 798 (1975) ("The
7    law of a first appeal is the law of the case on all subsequent appeals in which the facts are
8    substantially the same.") (quoting <u>Walker v. State</u>, 85 Nev. 337, 343, 455 P.2d 34, 38 (1969));
9    <u>Pellegrini v. State</u>, 117 Nev. 860, 888, 34 P.3d 519, 538 (2001) (holding that, under the law of
10   the case doctrine, issues previously decided on direct appeal may not be reargued in a habeas
11   petition) (citing <u>McNelton</u>, 115 Nev. at 414-15, 990 P.2d at 1275).

12       Further, Petitioner cannot demonstrate prejudice because there was sufficient evidence.
13   When reviewing a sufficiency of the evidence claim, the relevant inquiry is *not* whether this
14   Court is convinced of the defendant's guilt beyond a reasonable doubt. <u>Wilkins v. State</u>, 96
15   Nev. 367, 374, 609 P.2d 309, 313 (1980). Rather, when the jury has already found the
16   defendant guilty, the limited inquiry is "whether, after viewing the evidence in the light most
17   favorable to the prosecution, any rational trier of fact could have found the essential elements
18   of the crime beyond a reasonable doubt." <u>Milton v. State</u>, 111 Nev. 1487, 1491, 908 P.2d 684,
19   686-87 (1995) (quotation and citation omitted). "Where there is substantial evidence to support
20   a verdict in a criminal case, as the record indicates in this case, the reviewing court will not
21   disturb the verdict nor set aside the judgment." <u>Sanders v. State</u>, 90 Nev. 433, 434, 529 P.2d
22   206, 207 (1974). Thus, the evidence is only insufficient when "the prosecution has not
23   produced a minimum threshold of evidence upon which a conviction may be based, even if
24   such evidence were believed by the jury." <u>Evans v. State</u>, 112 Nev. 1172, 1193, 926 P.2d 265,
25   279 (1996) (emphasis removed).

26       A conspiracy occurs when there is an agreement between two or more people for an
27   unlawful purpose; a person who knowingly does any act in furtherance of the conspiracy or
28   otherwise participates therein, is criminally liable for the acts of his co-conspirators. <u>Doyle v,</u>

15

1  State, 112 Nev. 879, 894, 921 P.2d 901, 911 (1996), overruled on other grounds by Kaczmarek

2  v. State, 120 Nev. 314, 333, 91 P.3d 16, 29 (2004). The Nevada Supreme Court has recognized

3  that a conspiracy is usually supported by inferences from the parties' conduct, rather than

4  direct proof. Id. "[A] conspiracy conviction may be supported by a coordinated series of acts

5  in furtherance of the underlying offence, sufficient to infer the existence of an agreement." Id.

6  (internal quotations omitted). A co-conspirator may be held liable for the general intent crimes

7  of his coconspirators when the crimes in question were a "reasonably foreseeable consequence

8  of the object of the conspiracy." Bolden v. State, 121 Nev. 908, 923, 124 P.2d 191, 201 (2005).

9      Here, the State presented sufficient evidence for a reasonable jury to find that

10  McKinney was beaten and robbed in furtherance of a conspiracy, or as a reasonably

11  foreseeable consequence of the conspiracy. McKinney testified that he had no issues or "bad

12  blood" with Eagles, but that he had argued with Petitioner a few days prior. Supp. at 350-52.

13  Moreover, the surveillance video demonstrated that the attack on McKinney was not random

14  or precipitated by any conflict arising at the time. Petitioner was standing with Eagles and

15  Gyro when McKinney first arrived at the Fifth Avenue Pub. Supp. at 409-411. Petitioner was

16  familiar with McKinney's truck and had previously ridden in it. Supp. at 344-45. Furthermore,

17  McKinney did not exit his truck for three minutes, during which time Gyro, Eagles, and

18  Petitioner all crossed the parking lot in close succession. Supp. at 327-28, 409-11.

19      Gyro struck McKinney from behind as soon as he was near Petitioner. Supp. at 328.

20  Neither Eagles nor Petitioner demonstrated any surprise or confusion after Gyro's seemingly

21  unprovoked attack; rather, as soon as McKinney hit the ground, Eagles joined the attack and

22  Petitioner laughed and gloated. Supp. at 331-32, 342-43.

23      Further, there was no delay between the initial beating and the time that Eagles began

24  taking property from McKinney while he laid motionless on the ground. The immediate taking

25  of property could reasonably have been inferred as within the scope of the agreement to attack

26  McKinney – the two could take whatever property they desired from McKinney as their spoils.

27  Additionally, Petitioner was present and observed as Eagles and several others moved

28  McKinney across the parking lot. Supp. at 397. When Eagles began to struggle moving

16

McKinney's motionless body, Petitioner went over and took Eagles' cigarette so that he could continue moving McKinney's body. Supp. at 419-20. While other individuals were present, only Petitioner and Eagles were together immediately before the attack, immediately following the attack, and roughly 20 minutes later when they moved McKinney across the parking lot.

Moreover, less than a minute after the attack, Petitioner removed something from his mouth and handed it to Eagles, who did not hand anything back to Petitioner. Supp. at 500-01. Detective Auschwitz and Angela Bacon recognized this motion as consistent with a narcotics transaction. Supp. at 421-24, 497-501. The hand-to-hand transaction was the first interaction between Petitioner and Eagles after the attack, but no words were spoken. The lack of communication could reasonably be inferred to demonstrate a preexisting agreement to attack McKinney.

Likewise, Petitioner's gleeful behavior and post-attack conduct demonstrated consciousness of guilt and detailed the motive for the beating. Petitioner was present when police initially reviewed the surveillance video and became nervous after the police left. Supp. at 401-02. Petitioner also told Bacon that he had talked to his lawyer who told him he did not have anything to worry about so long as the video looked like he was just wiping his mouth and shaking someone's hand. Supp. at 402. Petitioner also explained that McKinney was attacked because, during the argument in McKinney's truck, McKinney threatened to tell Petitioner's wife that he was sleeping with other women, and that Petitioner "wasn't going to have that." Supp. at 403-04. Based on the evidence presented, a rational juror could—and did—find that Petitioner conspired to rob McKinney on November 8, 2015. Thus, Petitioner cannot establish prejudice.

## C. PETITIONER IS NOT ENTITLED TO AN EVIDENTIARY HEARING

Petitioner requests an evidentiary hearing. Petition at 12. NRS 34.770 determines when a defendant is entitled to an evidentiary hearing:

> 1. The judge or justice, upon review of the return, answer and all supporting documents which are filed, shall determine whether an evidentiary hearing is required. A petitioner must not be

17

discharged or committed to the custody of a person other than the
respondent unless an evidentiary hearing is held.
2. If the judge or justice determines that the petitioner is not
entitled to relief and an evidentiary hearing is not required, he shall
dismiss the petition without a hearing.
3. If the judge or justice determines that an evidentiary hearing is
required, he shall grant the writ and shall set a date for the hearing.

The Nevada Supreme Court has held that if a petition can be resolved without
expanding the record, then no evidentiary hearing is necessary. Mann v. State, 118 Nev. 351,
356, 46 P.3d 1228, 1231 (2002); Marshall v. State, 110 Nev. 1328, 1331, 885 P.2d 603, 605
(1994). A defendant is entitled to an evidentiary hearing if his petition is supported by specific
factual allegations, which, if true, would entitle him to relief unless the factual allegations are
repelled by the record. Marshall, 110 Nev. at 1331, 885 P.2d at 605; Hargrove, 100 Nev. at
503, 686 P.2d at 225 (holding that "[a] defendant seeking post-conviction relief is not entitled
to an evidentiary hearing on factual allegations belied or repelled by the record"). "A claim is
'belied' when it is contradicted or proven to be false by the record as it existed at the time the
claim was made." Mann, 118 Nev. at 354, 46 P.3d at 1230 (2002).

Here, there is no need to expand the record. As to Petitioner's claim that counsel was
ineffective for failing to object to res gestae evidence, the Court of Appeals already ruled that
the evidence was properly admitted. Also, counsel explained why he did not object. As to
Petitioner's claim that his counsel failed to show him the video surveillance, he provides only
bare allegations. Also, Petitioner was aware of the contents of the video from the preliminary
hearing and counsel confirmed with the Court at the motion to consolidate hearing that he
would provide a copy of discovery with Petitioner. As to Petitioner's claim that counsel failed
to object to joinder, this claim is belied by the record. Counsel filed an opposition to
consolidation. Also, joinder was appropriate. As to Petitioner's insufficient evidence claim,
that claim is inappropriate for habeas, the Court of Appeals already found that there was
sufficient evidence, and the record supports that there was sufficient evidence. Thus, there is
no reason to expand the record and the Court denies the request for an evidentiary hearing.

W \2016\2016F\002\46\16F00246-FFCO-(KIE__DONALD)-001.DOCX

1

2          **ORDER**

3          THEREFORE, IT IS HEREBY ORDERED that the Petition for Post-Conviction Relief

shall be, and it is, hereby denied.

4          DATED this ___13th___ day of June, 2019.

5

6                                   DISTRICT JUDGE

7 STEVEN B. WOLFSON
Clark County District Attorney

8 Nevada Bar #001565

9 BY

10         JONATHAN E. VANBOSKERCK
Chief Deputy District Attorney

11 Nevada Bar #006528

12

13

14          **CERTIFICATE OF SERVICE**

15          I certify that on the ___19th___ day of June, 2019, I mailed a copy of the foregoing proposed

16 Findings of Fact, Conclusions of Law, and Order to:

17              WALEED ZAMAN, ESQ.
wally@zamanlegal.com

18

19          BY

20              Secretary for the District Attorney's Office

21

22

23

24

25

26

27

28 JEV/mah/LI

                          19

# EXHIBIT 3

# IN THE COURT OF APPEALS OF THE STATE OF NEVADA

DONALD KIE, JR.,
Appellant,
vs.
THE STATE OF NEVADA,
Respondent.

No. 79189-COA

**FILED**

AUG 1 0 2020

ELIZABETH A. BROWN
CLERK OF SUPREME COURT
BY
DEPUTY CLERK

## ORDER OF AFFIRMANCE

Donald Kie, Jr., appeals from an order of the district court denying a postconviction petition for a writ of habeas corpus.   Eighth Judicial District Court, Clark County; Cristina D. Silva, Judge.

Kie argues the district court erred by denying the claims of ineffective assistance of counsel he raised in his July 31, 2018, petition and later-filed supplement.   To prove ineffective assistance of counsel, a petitioner must demonstrate counsel's performance was deficient in that it fell below an objective standard of reasonableness, and resulting prejudice such that there is a reasonable probability, but for counsel's errors, the outcome of the proceedings would have been different.   *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984); *Warden v. Lyons*, 100 Nev. 430, 432-33, 683 P.2d 504, 505 (1984) (adopting the test in *Strickland*).   Both components of the inquiry must be shown.   *Strickland*, 466 U.S. at 687.   To warrant an evidentiary hearing, the petitioner must raise claims supported by specific factual allegations that are not belied by the record and, if true, would entitle him to relief.   *Hargrove v. State*, 100 Nev. 498, 502-03, 686 P.2d 222, 225 (1984).

20-29281

First, Kie argued his trial counsel was ineffective for failing to request a *Petrocelli*[1] hearing regarding evidence of Kie's participation in a drug deal or a limiting instruction concerning that evidence. The State contended Kie used the drugs as payment to induce a person to attack the victim in the underlying case. Prior to trial, the State filed a motion requesting admission of the drug-sale evidence and Kie did not oppose the motion. During the hearing concerning the State's motion, Kie's counsel informed the trial court the State merely sought admission of evidence it already utilized during the preliminary hearing and the State would not seek to introduce any further evidence concerning Kie's prior wrongdoing unless the defense opened the door to such information. Counsel stated that, based upon those reasons, he chose not to oppose the motion. The district court found that counsel's decision to decline to oppose the motion was objectively reasonable under the circumstances of this case and the record supports the district court's decision.

In addition, on direct appeal this court concluded that evidence concerning Kie's participation in the drug deal was properly admitted at trial pursuant to the res gestae rule to prove Kie engaged in a conspiracy by providing drugs to another person in exchange for an attack on the victim. *Kie, Jr. v. State*, Docket No. 71905-COA (Order of Affirmance, December 15, 2017). Because the evidence concerning Kie's participation in a drug deal was properly admitted at trial, Kie failed to demonstrate a reasonable probability of a different outcome had counsel argued against the admission of the challenged evidence. In addition, in light of the significant evidence

---

[1]*Petrocelli v. State*, 101 Nev. 46, 692 P.2d 503 (1985), *superseded in part by statute as stated in Thomas v. State*, 120 Nev. 37, 44-45, 83 P.3d 818, 823 (2004).

of Kie's guilt presented at trial, he failed to demonstrate a reasonable probability of a different outcome had counsel requested a limiting instruction concerning the drug-deal evidence. Therefore, we conclude the district court did not err by denying this claim without conducting an evidentiary hearing.

Second, Kie argued his trial counsel was ineffective for failing to ensure Kie personally viewed the surveillance video depicting the crime. Kie contended he should have been permitted to view the video when deciding whether to accept a plea offer. The district court found the State utilized the surveillance video during the preliminary hearing when it questioned witnesses and Kie was present at that hearing. The district court further found that, because Kie attended the preliminary hearing, he would have been aware of the nature of the evidence against him and had the opportunity to utilize that knowledge when weighing plea offers. Therefore, the district court concluded, Kie failed to demonstrate a reasonable probability of a different outcome had counsel ensured he viewed the surveillance video when deciding whether to accept a plea offer. The record supports the district court's decision.

Moreover, Kie did not demonstrate a reasonable probability there was e plea offer from the State that he would have accepted absent counsel's alleged deficiency, the State would not have withdrawn its plea offer in light of intervening circumstances, and the district court would have accepted such an offer. *See Lafler v. Cooper*, 566 U.S. 156, 163-64 (2012); *see also Missouri v. Frye*, 566 U.S. 134, 147 (2012) ("To establish prejudice in this instance, it is necessary to show a reasonable probability that the end result of the criminal process would have been more favorable by reason of a plea to a lesser charge or a sentence of less prison time."). Therefore,

*Courts*

we conclude the district court did not err by denying this claim without conducting an evidentiary hearing.  Accordingly, we

ORDER the judgment of the district court AFFIRMED.

_____, C.J.
Gibbons

_____, J.
Tao

_____, J.
Bulla

cc:   Hon. Cristina D. Silva, District Judge
      Zaman & Trippiedi, PLLC
      Attorney General/Carson City
      Clark County District Attorney
      Eighth District Court Clerk

# EXHIBIT 4

Electronically Filed
03/17/2016 08:19:34 AM

**CLERK OF THE COURT**

1  INFM
STEVEN B. WOLFSON
2  Clark County District Attorney
Nevada Bar #001565
3  WILLIAM FLINN, JR.
Deputy District Attorney
4  Nevada Bar #013119
200 Lewis Avenue
5  Las Vegas, Nevada 89155-2212
(702) 671-2500
6  Attorney for Plaintiff

7  I.A. 03/18/2016                    **DISTRICT COURT**
10:00 A.M.                    **CLARK COUNTY, NEVADA**
8  PD ROSS

9  THE STATE OF NEVADA,

10                  Plaintiff,                    CASE NO:    C-16-313419-1

11       -vs-                                     DEPT NO:    III

12  DONALD KIE, aka, Donald Kie, Jr.,
#1063260
13                                                **I N F O R M A T I O N**
                  Defendant.
14

15  STATE OF NEVADA      )
                        } ss.
16  COUNTY OF CLARK      )

17        STEVEN B. WOLFSON, District Attorney within and for the County of Clark, State

18  of Nevada, in the name and by the authority of the State of Nevada, informs the Court:

19        That DONALD KIE, aka, Donald Kie, Jr., the Defendant(s) above named, having

20  committed the crimes of **POSSESSION OF CONTROLLED SUBSTANCE WITH**

21  **INTENT TO SELL (Category D Felony - NRS 453.337 - NOC 51141) and TRANSPORT**

22  **OF A CONTROLLED SUBSTANCE (Category B Felony - NRS 453.321 - NOC 51090),**

23  on or about the 1st day of September, 2014, within the County of Clark, State of Nevada,

24  contrary to the form, force and effect of statutes in such cases made and provided, and against

25  the peace and dignity of the State of Nevada,

26  COUNT 1 - POSSESSION OF CONTROLLED SUBSTANCE WITH INTENT TO SELL

27        did willfully, unlawfully, and feloniously possess, for the purpose of sale, a controlled

28  substance, to-wit: Marijuana.

W:\2015\2015F\092\62\15F09262-INFM-(KIE__DONALD)-001.DOCX

COUNT 2 - TRANSPORT OF A CONTROLLED SUBSTANCE

did willfully, unlawfully, and feloniously transport within Clark County, Nevada, a controlled substance, to-wit: Marijuana.

STEVEN B. WOLFSON
Clark County District Attorney
Nevada Bar #001565

BY   /s/ William Flinn, Jr.
WILLIAM FLINN, JR.
Deputy District Attorney
Nevada Bar #013119

Names of witnesses known to the District Attorney's Office at the time of filing this Information are as follows:

| NAME | ADDRESS |
|---|---|
| BOURQUE, Robert | LVMPD # 5576 |
| CUSTODIAN OF RECORDS OR DESIGNEE | Clark County Detention Center, 330 S. Casino Center Blvd., Las Vegas, NV |
| CUSTODIAN OF RECORDS OR DESIGNEE | Clark County Detention Center, Communications 330 S. Casino Center Blvd., Las Vegas, NV |
| CUSTODIAN OF RECORDS OR DESIGNEE | LVMPD Communications, 400 E. Stewart Las Vegas, NV |
| CUSTODIAN OF RECORDS OR DESIGNEE | LVMPD Records, 400 E. Stewart Las Vegas, NV |
| DOUGHERTY, Ed OR DESIGNEE | INVESTIGATOR C.C. DISTRICT ATTORNEY |
| RAAB, Ervin | HPD #121 |

15F09262X /saj/L-1
LVMPD EV#1409012877
(TK11)

2

W:\2015\2015F092\62\15F09262-INFM-(KIE__DONALD)-001.DOCX

# EXHIBIT 5

1  **AINF**
   STEVEN B. WOLFSON
2  Clark County District Attorney
   Nevada Bar #001565
3  WILLIAM FLINN, JR.
   Deputy District Attorney
4  Nevada Bar #013119
   200 Lewis Avenue
5  Las Vegas, Nevada 89155-2212
   (702) 671-2500
6  Attorney for Plaintiff

FILED IN OPEN COURT
STEVEN D. GRIERSON
CLERK OF THE COURT

JUL 0 7 2016

BY_____
    DEBORAH MILLER, DEPUTY

7              DISTRICT COURT
8          CLARK COUNTY, NEVADA

9  THE STATE OF NEVADA,

10             Plaintiff,

11      -vs-                          CASE NO.   C-16-313419-1

12  DONALD KIE, aka, Donald Kie, Jr.,   DEPT NO.   III
    #1063260
13                                        AMENDED
               Defendant.
14                                    I N F O R M A T I O N

15  STATE OF NEVADA    }
                       } ss:
16  COUNTY OF CLARK    }

17      STEVEN B. WOLFSON, District Attorney within and for the County of Clark, State

18  of Nevada, in the name and by the authority of the State of Nevada, informs the Court:

19      That DONALD KIE, aka, Donald Kie, Jr., the Defendant(s) above named, having

20  committed the crime of **POSSESSION OF DRUGS WHICH MAY NOT BE**

21  **INTRODUCED IN INTERSTATE COMMERCE (Misdemeanor - NRS 454.351 - NOC**

22  **51366),** on or about the 1st day of September, 2014, within the County of Clark, State of

23  Nevada, contrary to the form, force and effect of statutes in such cases made and provided,

24  and against the peace and dignity of the State of Nevada, did willfully and unlawfully possess

25  ///

26  ///

27  ///

28

1  and have under his control a drug which may not be lawfully introduced into interstate

2  commerce under the Federal Food, Drug and Cosmetic Act, to-wit: Marijuana.

3                                        STEVEN B. WOLFSON
                                         Clark County District Attorney
4                                        Nevada Bar #001565

5                              BY    *Brian T. Kresel for*

6                                    WILLIAM FLINN, JR.
                                     Deputy District Attorney
7                                    Nevada Bar #013119

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27  DA#15F09262X /saj/L-1
    LVMPD EV#1409012877
28  (TK11)

                                          2

# EXHIBIT 6

1 | OPPN
LAW OFFICES OF KENNETH G. FRIZZELL, III
2 | Kenneth G. Frizzell, III, Esq.
Nevada Bar #006303
3 | 619 South Sixth Street
Las Vegas, Nevada 89101
4 | (702) 366-1230
Attorney for Proposed Consolidated Defendant, Donald Kie
5 |

Electronically Filed
05/04/2016 12:13:21 PM

CLERK OF THE COURT

6 | DISTRICT COURT

7 | CLARK COUNTY, NEVADA

8 | STATE OF NEVADA,                    )        C313697
|                                     )
9 |                 Plaintiff,          )   Case No.: C-16-312386-1
|                                     )   Dept. No.:   XII
10 | -vs-                                )
|                                     )
11 | BRYAN EAGLES,                       )   Date: 5/5/16
|                                     )   Time: 8:30 a.m.
12 |                 Defendant.          )

13 | ## OPPOSITION TO MOTION TO CONSOLIDATE CASE C-16-313697-1 INTO THE INSTANT CASE

14 |
15 |       COMES NOW the Proposed Consolidated Defendant, DONALD KIE, (Kie), by and
16 | through his counsel, Kenneth G. Frizzell, III, Esq., and hereby submits his Opposition to
17 | the State's Motion to Consolidate.
18 |       This Opposition is made and based upon the papers and pleading on file herein, the
19 | Points and Authorities attached hereto, and any oral argument allowed at the time of the
20 | hearing of this matter.
21 |       DATED this ___2___ day of May, 2016.

22 |
23 |                                        KENNETH G. FRIZZELL, III, ESQ.
|                                        Nevada Bar No. 006303
24 |                                        619 South 6th Street
|                                        Las Vegas, NV 89101
25 |                                        (702) 366-1230
|                                        Attorney for Defendant
26 |
27 |
28 |

1
## POINTS AND AUTHORITIES

2        Counsel was appointed to Mr. Kie's case in mid-March, 2016, and conducted the

3   preliminary hearing on March 28, 2016. At the preliminary hearing the matter was bound

4   up to District Court as to Kie, but striking any reference to deadly weapons in the charging

5   documents, thereby eliminating any deadly weapon enhancement charges.

6        Counsel does not Object to the plain reading of the NRS statutes that the State

7   cites. However, in its Motion, the State relies almost solely upon the case of Weber v.

8   State, 121 Nev. 554 (2005). What the State conveniently neglects to bring up to the Court

9   is that portion of said case that speaks to prejudicial joinder. Paraphrasing, the Court

10   stated that even if charges could be properly joined, severance may still be mandated

11   where joinder would result in unfair prejudice to the defendant.

12        In this matter, there is _no_ direct evidence that Kie had any kind of arrangement with

13   Eagles to engage in these acts with which he's charged. At the preliminary hearing, the

14   transcript for which is not filed as yet, there was testimony of acts in general, but not

15   specific to this case. The only other thing that the State can point to is motion allegedly

16   made by my client on a surveillance video wherein a person's back, alleged to be Kie's, is

17   to the camera showing this person wiping his mouth and shaking hands with the person

18   purported to be Eagles more than 20-30 minutes after the beating of the victim. There was

19   no testimony at the preliminary hearing from the bartender on duty that night, or anyone

20   else, that witnessed the alleged "payment" for services rendered with drugs or any other

21   kind of tender. Even the alleged victim testified that he did not know for sure and had no

22   proof but that he only believed Kie "paid" Eagles to attack him.

23        The only thing that trying these cases together will do is prejudice Kie. A jury will

24   quickly look at Kie and Eagles in the same case as working together by the mere fact they

25   are in the same case sitting next to each other at the same defense table. They will be

26   looked at as co-conspirators by that fact alone. Kie maintains his innocence in that he had

27   no part in the beating that ensued and did not pay anyone to do it. Any statements he may

28

1    have made to the bartender, Ms. Bacon, as to bartering were general and said in jest.

2          While the State may have been able to bring these cases together, keeping them

3    separate as they currently are will protect the defendants, KIE and EAGLES, in their

4    respective matters, from a joinder resulting in unfair prejudice.  Defendant, KIE, therefore

5    respectfully requests that this Court deny the State's motion herein in its entirety.

6          DATED this ___ day of May, 2016.

7

8

9          KENNETH G. FRIZZELL, III, ESQ.
           Nevada Bar No.: 006303
10         619 South 6th Street
           Las Vegas, Nevada 89101
11         (702) 366-1230
           Attorney for Defendant

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28                              - 3 -