UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| Donald Kie, Jr., | Case No.: 3:20-cv-00709-RCJ-CLB |
| Petitioner | **Order** |
| v. | |
| Warden Garrett, et al., | |
| Respondents | |

Petitioner Donald Kie, Jr. is a Nevada prisoner who was convicted of conspiracy to commit robbery, robbery, battery resulting in substantial bodily harm, and battery with intent to commit a crime and is serving an aggregate sentence of 13 years and 7 months to 34 years. ECF No. 39-36. Petitioner filed a third amended petition for writ of habeas corpus under 18 U.S.C. § 2254, alleging claims of insufficient evidence and ineffective assistance of counsel. ECF No. 35. The Court denies the remaining grounds of the third amended petition, denies Petitioner a certificate of appealability, and directs the clerk to enter judgment accordingly.

I.  **Background**[1]

   a. **Conviction and Appeal**

Petitioner challenges a 2016 judgment of conviction and sentence imposed by the

---

[1] The Court makes no credibility findings or other factual findings regarding the truth or falsity of evidence or statements of fact in the state court. The Court summarizes the factual assertions solely as background to the issues presented in the case, and it does not summarize all such material. No statement of fact made in describing statements, testimony, or other evidence in the state court constitutes a finding by the Court. Any absence of mention of a specific piece of evidence or category of evidence does not signify that the Court has overlooked the evidence in considering Petitioner's claims.

Eighth Judicial Court for Clark County. Following a jury trial, Petitioner was found guilty of conspiracy to commit robbery, robbery, battery resulting in substantial bodily harm, and battery with intent to commit a crime. ECF No. 39-36. The Nevada Court of Appeals affirmed the conviction. ECF No. 40-5.

### b. Facts Underlying Conviction

An individual named Brian Eagles ("Eagles") and another man accosted, robbed, and severely battered the victim outside of a bar, breaking the victim's neck and leaving him temporarily paralyzed. ECF No. 40-5 at 2. They also stole the victim's personal property and his truck. *Id*. The incident was captured by surveillance cameras and the State presented the video of the incident at trial. *Id*.; *see also* ECF No. 39-23 at 8.

Petitioner was present before, during, and after the incident. ECF No. 40-5 at 2. The State presented its theory of the case at trial that Petitioner paid Eagles with drugs to beat up and rob the victim. ECF No. 39-23 at 8-9. Shortly after Eagles finished beating the victim, Petitioner approached Eagles. ECF No. 40-5 at 2. Petitioner moved his hand to his mouth and then touched Eagles's right hand. *Id*. Seconds later, Eagles transferred something from his right hand to his left hand. *Id*. The State presented evidence that drug transactions have occurred at this bar and that drugs are often transferred from mouth to hand. *Id*. The State argued that Petitioner conspired with Eagles to beat the victim because the victim threatened to tell Petitioner's wife of Petitioner's extramarital affairs. *Id*.

### c. State Post-Conviction Proceedings and Federal Habeas Action

Petitioner filed a *pro se* state habeas petition and a counseled supplemental state petition. ECF Nos. 40-12, 40-13, 40-21. The state court denied relief and the Nevada Court of Appeals affirmed the denial of relief. ECF Nos. 40-42, 40-49.

Petitioner initiated this federal habeas proceeding *pro se*. ECF No. 1. The Court appointed counsel and granted leave to amend the petition. ECF No. 12. Petitioner filed a first, second, and third amended petition. ECF Nos. 13, 24, 35. Respondents moved to dismiss and the Court granted, in part, finding Ground 3 unexhausted. ECF Nos. 38, 48. Petitioner elected to abandon Ground 3 and proceed on his remaining claims. ECF No. 49.

## II. Governing Standards of Review

### a. Review under the Antiterrorism and Effective Death Penalty Act

28 U.S.C. § 2254(d) sets forth the standard of review generally applicable in *habeas corpus* cases under the Antiterrorism and Effective Death Penalty Act (AEDPA):

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). A state court decision is contrary to established Supreme Court precedent, within the meaning of § 2254(d)(1), "if the state court applies a rule that contradicts the governing law set forth in [Supreme Court] cases" or "if the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court." *Lockyer v. Andrade*, 538 U.S. 63, 73 (2003) (quoting *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000), and citing *Bell v. Cone*, 535 U.S. 685, 694 (2002)). A state court decision is an unreasonable application of established Supreme Court precedent under § 2254(d)(1), "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 75 (quoting

3

*Williams*, 529 U.S. at 413). "The 'unreasonable application' clause requires the state court decision to be more than incorrect or erroneous. The state court's application of clearly established law must be objectively unreasonable." *Id.* (internal citation omitted) (quoting *Williams*, 529 U.S. at 409-10).

The Supreme Court has instructed that a "state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). The Court has stated that "even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id.* at 102 (citing *Lockyer*, 538 U.S. at 75); *see also Cullen v. Pinholster*, 563 U.S. 170, 181 (2011) (internal quotation marks and citations omitted) (describing the standard as "difficult to meet" and "highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt").

### b. Standard for Evaluating an Ineffective Assistance of Counsel Claim

In *Strickland*, the Supreme Court propounded a two-prong test for analysis of ineffective-assistance-of-counsel claims requiring Petitioner to demonstrate that: (1) the counsel's "representation fell below an objective standard of reasonableness[;]" and (2) the counsel's deficient performance prejudices Petitioner such that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland v. Washington*, 466 U.S. 668, 688, 694 (1984). Courts considering an ineffective-assistance-of-counsel claim must apply a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689. It is Petitioner's burden to show "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed . . .

by the Sixth Amendment." *Id.* at 687. Additionally, to establish prejudice under *Strickland*, it is not enough for Petitioner to "show that the errors had some conceivable effect on the outcome of the proceeding." *Id.* at 693. Rather, errors must be "so serious as to deprive [Petitioner] of a fair trial, a trial whose result is reliable." *Id*. at 687.

Where a state court previously adjudicated the ineffective-assistance-of-counsel claim under *Strickland*, establishing the court's decision was unreasonable is especially difficult. *See Richter*, 562 U.S. at 104-05. In *Richter*, the Supreme Court clarified that *Strickland* and § 2254(d) are each highly deferential, and when the two apply in tandem, review is doubly so. *See id.* at 105; *see also Cheney v. Washington*, 614 F.3d 987, 995 (9th Cir. 2010) (internal quotation marks omitted) The Court further clarified, "[w]hen § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Richter*, 562 U.S. at 105.

### III.   Discussion

#### a.   Ground 1—Insufficient Evidence

In Ground 1, Petitioner alleges that he was denied his due process rights because there was insufficient evidence to support the convictions. ECF No. 35 at 17-20. Petitioner asserts he was convicted because he was present at the incident, because of his interaction with Eagles after the beating, and testimony speculating that Petitioner transferred drugs to Eagles. *Id*. at 18. He further asserts that the video evidence demonstrates that Petitioner did not participate in the beating and there was no evidence of an agreement between Petitioner and Eagles to commit a robbery. *Id*. at 18-19.

Petitioner argues that the Nevada Court of Appeals' decision was unreasonable because the court referred to irrelevant evidence in its decision and because the evidence, nonetheless, did

not support a conviction of conspiracy. *Id*. at 19-20. He asserts that the "entire case is based on speculation of the bartender that a touching of hands was not only a transfer of unseen drugs, but drugs that were paid in furtherance of a conspiracy to beat up [the victim]." *Id*. at 19. He argues that there was no credible evidence of a conspiracy. *Id*. at 20.

### i. Background Information

#### 1. Surveillance Video

At trial, the State presented surveillance video that showed that Petitioner and Eagles standing together in the parking lot before the victim arrived at the bar. ECF No. 39-25 at 20. Next, Eagles moved to stand with another individual to wait for the victim to arrive while Petitioner stood in front of the bar that had a view of where the incident took place. *Id*. When the victim arrives, Eagles and another man flanked the victim. *Id*. at 21. They beat the victim and stomped on his body while Petitioner walked into the bar smiling. *Id*. at 20.

The surveillance video showed Eagles taking the victim's shoes, pointing at the victim, dancing around and taunting the victim while the victim lay motionless on the ground. *Id*. at 22. Petitioner approached Eagles. *Id*. Petitioner reached his hand to his mouth then touched Eagles's right hand. *Id*. The surveillance video showed Eagles transferring an item from his right hand to left. *Id*.

The surveillance video also showed Petitioner standing over the victim, who was lying on the ground, approximately 10 minutes after the beating. *Id*. at 23. While standing over the victim, Petitioner shook his head and gestured towards the victim. *Id*. Another individual took the keys from the victim's pocket and drove the victim's truck out of the parking lot. *Id*. at 24.

1   The surveillance video showed Eagles and two women moved the victim's body from the parking lot. *Id*. at 24. Petitioner was present and watching. *Id*. Petitioner held Eagles's cigarette while Eagles and the two women moved the victim's body. *Id*.

### 2. The Victim's Testimony

The state called the victim to testify at trial. ECF No. 39-23 at 68. He testified that he was attacked after walking out of his truck towards the entrance of the bar. *Id*. at 70. Petitioner and Eagles knew the victim's truck. ECF No. 38-25 at 20. The victim recalled Petitioner standing over him while he was on the ground. ECF No. 39-23 at 85. The victim further testified that he had a disagreement with Petitioner a day or two before the incident happened. *Id.* at 86. Defense counsel cross-examined the victim regarding his ability to recollect the incident and his previous habitual drug use. *Id*. at 95-119.

### 3. Bacon's Testimony

The state called Angela Bacon ("Bacon"), a bartender, to testify at trial. ECF No. 39-23 at 124. She testified that drug dealers and vagrants were patrons of the bar. *Id*. at 127. She identified Petitioner and Eagles as regular patrons of the bar. *Id*. at 129. She testified the Petitioner entered the bar laughing and told her she needed to go outside to see what happened. *Id*. She observed a man lying on the ground and was told that he was sleeping. *Id*. at 133.

Bacon testified that she watched the surveillance video while at the bar when a detective came to access the video. ECF No. 39-23 at 142. Petitioner was also present at the bar when the detective came. *Id*. at 143. Bacon testified that Petitioner was nervous when the detective came to the bar. *Id*. She further testified that Petitioner informed her that he spoke to his lawyer who advised him that he "didn't have anything to worry about as long as it looked like he was just wiping his mouth and spitting on his hand or something and shaking somebody else's hand." *Id*.

at 145. Bacon testified that Petitioner informed her that the victim was going to tell Petitioner's wife that Petitioner was sleeping with another woman. *Id*. at 145-46. Petitioner told Bacon that "he wasn't going to have that." *Id*. at 146.

Bacon identified Eagles and Petitioner in the surveillance video. *Id*. at 151-52. She testified that the video showed Petitioner transferring an item to Eagle's hand. *Id*. at 164. Bacon testified that based on her conversations with Petitioner, she believed they were transferring narcotics. *Id*. Bacon observed narcotics transactions during her employment at the bar. *Id*. at 165. She testified that during drug transactions, individuals would put drugs in their mouth under their tongue, take the drugs out, and put it in somebody's hand. *Id*.

Defense counsel cross-examined Bacon clarifying that her testimony was based on the video surveillance because she was not present at the scene of the incident. *Id*. at 167. Defense counsel also cross-examined Bacon regarding her testimony at the preliminary hearing. *Id*.

### 4. Detective Auschwitz's Testimony

The State called Detective Auschwitz to testify at trial. ECF No. 39-23 at 221. Detective Auschwitz testified that when he spoke with the victim, the victim "was quite sure that an individual named [Eagles] was the one that…battered him," and that Petitioner "was the lead guy behind that." *Id*. at 227. Detective Auschwitz showed the victim still images from the surveillance video and the victim also identified Petitioner and Eagles from a photo lineup. *Id*. at 230, 235.

He further testified as to his experience observing narcotics transactions. *Id*. at 240. He testified he observed narcotics activity as a patrol officer in the Downtown Area Command and "pretty much everywhere [his] whole entire career." *Id*. The prosecution played the portion of the

8

surveillance video where Petitioner touched Eagles's hand after touching his mouth. *Id.* at 241. Detective Auschwitz testified as follows:

> When you look at the video, you could see [Petitioner] reach – reach around in the facial area towards the general area of his mouth, and – and it appears that he's – he takes something out, and the way he hand – he handed something to [Eagles]. That – that's not normal. Normal people don't – don't do that. Especially some – at – at a particular establishment, like the 5th Avenue Pub. That's – you – normally, you – you hand out the drugs, and with the other hand, you take something back, such as money. In this – in most my narcotics experiences, you – you take the money back the US currency or whatever it might be, and hand off the drugs. And then you go on your way.
>
> And in this situation, [Petitioner] handed something to him, it's unknown, but he handed something to him from – I'm assuming from his mouth, because of my training and experience, most narcotics dealers use their mouth as a way to transport and conceal narcotics. But [Eagles], he never – he never – gave anything to [Petitioner]. He just – he just went up there as, like, he expected something from him in return.

*Id.* at 242-43. He testified that in his training and experience that a drug transaction took place between Petitioner and Eagles. *Id.* at 257. He further testified that the 5th Avenue Pub was a known location to buy narcotics. *Id.* at 244. During his investigation, the victim told Detective Auschwitz that he owed Petitioner money for drugs. *Id.* at 258.

### ii.  State Court Determination

On direct appeal, the Nevada Court of Appeals held:

> Evidence is sufficient to support a verdict if "*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Higgs v. State*, 126 Nev. 1, 11, 222 P.3d 648, 654 (2010) (quoting *Rose v. State*, 123 Nev. 194, 202, 163 P.3d 408, 414 (2007)). A conspiracy is "an agreement between two or more persons for an unlawful purpose," and a co-conspirator "who knowingly does any act to further the object of a conspiracy, or otherwise participates therein, is criminally liable as a conspirator." *Doyle v. State*, 112 Nev. 879, 894, 921 P.2d 901, 911 (1996), *overruled on other grounds by Kaczmarek v. State*, 120 Nev. 314, 91 P.3d 16 (2004). The Nevada Supreme Court has explained, "if a coordinated series of acts furthering the underlying offense is sufficient to infer the existence of an agreement, then sufficient evidence exists to support a conspiracy conviction." *Thomas v. State*, 114 Nev. 1127, 1143, 967 P.2d 1111,1122 (1998) (internal quotations marks omitted). "[I]t is the function of the jury, not the appellate court, to weigh the evidence and pass upon the credibility of the witness." *Walker v. State*, 91 Nev. 724, 726, 542 P.2d 438, 439 (1975).

> Our review of the record reveals sufficient evidence to establish guilt beyond a reasonable doubt as determined by a rational trier of fact. *See Jackson v. Virginia*, 443 U.S. 307, 318-19 (1979); *Origel-Candido v. State*, 114 Nev. 378, 381, 956 P.2d 1378, 1380 (1998). The State presented evidence supporting the charges, including surveillance video and testimony by the victim, the bartender and the manager, a trauma nurse who treated the victim, and the detective assigned to the case. We conclude the jury could reasonably infer the essential elements of the conspiracy and other crimes charged from this evidence.

ECF No. 40-5 at 3-4.

### iii. Conclusion

The Nevada Court of Appeals' rejection of Petitioner's claim was neither contrary to nor an objectively unreasonable application of clearly established law as determined by the United States Supreme Court. When a habeas petitioner challenges the sufficiency of evidence to support his conviction, the court reviews the record to determine "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *Jones v. Wood*, 207 F.3d 557, 563 (9th Cir. 2000).

Sufficiency claims are limited to a review of the record evidence submitted at trial. *Herrera v. Collins*, 506 U.S. 390, 402 (1993). Such claims are judged by the elements defined by state law. *Jackson*, 443 U.S. at 324, n.16). The reviewing court must respect the exclusive province of the fact-finder to determine the credibility of witnesses, to resolve evidentiary conflicts, and to draw reasonable inferences from proven facts. *United States v. Hubbard*, 96 F.3d 1223, 1226 (9th Cir. 1996). The district court must assume the trier of fact resolved any evidentiary conflicts in favor of the prosecution, even if the determination does not appear on the record, and must defer to that resolution.

At trial, the State presented video evidence of the incident wherein Eagles beat the victim after Eagles was standing with Petitioner. The video evidence depicted Petitioner placing his

hand on his mouth, then putting an item into Eagles's hand after Eagles beat the victim. The video evidence further depicted Petitioner standing over the victim while he lay motionless on the ground. Detective Auschwitz and Bacon testified that individuals transport or conceal narcotics in their mouth. In his training and experience, Detective Auschwitz testified that a drug transaction took place between Petitioner and Eagles.

Detective Auschwitz, Bacon, and the victim also testified as to motive. The victim testified that he and Petitioner had a disagreement a day or two before the incident. Bacon testified that Petitioner informed her that the victim was going to tell Petitioner's wife that Petitioner had an affair. Detective Auschwitz testified that the victim stated that he owed Petitioner money for drugs.

Viewing the evidence in the light most favorable to prosecution, any rational trier of fact would have found the essential elements of conspiracy beyond a reasonable doubt. There was sufficient evidence of an agreement or mutual understanding between two or more people to commit the crimes of which Petitioner was convicted. Based on a review of the record of evidence submitted at trial, the Court concludes that a rational jury could have found the essential elements of the crimes beyond a reasonable doubt. Petitioner is denied federal habeas relief for Ground 1.

### b. Ground 2—Ineffective Assistance of Counsel

In Ground 2, Petitioner alleges trial counsel rendered ineffective assistance for failure to obtain a full set of videos of the incident from the prosecution, failure to show the complete set of videos to Petitioner, and failure to use exculpatory video evidence. ECF No. 35 at 23. He alleges that because he only saw a portion of the surveillance video evidence at the preliminary hearing, he did not accept a more favorable plea offer and/or did not insist on a different defense

strategy at trial. *Id*. He asserts that the portion of the videos presented at the preliminary hearing "did not include the portions of the videos that he knew must exist showing him trying to stop the beating and help the victim to get the keys to his truck back." *Id*. at 22.

### i. Petitioner's Declaration

In support of Ground 2, Petitioner attached a declaration dated November 5, 2021 to his second amended petition. ECF No. 24-1. Respondents object to consideration of Petitioner's declaration because he failed to properly present his declaration to the Nevada courts in accordance with Nevada's procedural rules. ECF No. 54 at 11. Petitioner argues that the substance of Ground 2 was presented to the state courts and his declaration contains additional facts in support of such claim. ECF No. 59 at 7.

The United States Supreme Court recently reiterated that a federal habeas court may not consider evidence beyond the state court record unless a petitioner satisfies 28 U.S.C. § 2254(e)(2). *Shinn v. Ramirez*, 142 S. Ct. 1712, 1730 (2022) ("Only rarely may a federal habeas court hear a claim or consider evidence that a prisoner did not previously present to the state courts in compliance with state procedural rules.") *see also Pinholster*, 563 U.S. at 180-81 (holding a federal court may review a federal habeas claim based solely on the record that was before the court that adjudicated the claim on the merits). Accordingly, the Court will not consider Petitioner's declaration.

### ii. State Court Determination

In denying the postconviction state habeas petition, the Nevada Court of Appeals held:

> [Petitioner] argued his trial counsel was ineffective for failing to ensure [Petitioner] personally viewed the surveillance video depicting the crime. [Petitioner] contended he should have been permitted to view the video when deciding whether to accept a plea offer. The district court found the State utilized the surveillance video during the preliminary hearing when it questioned witnesses and [Petitioner]

was present at that hearing. The district court further found that, because [Petitioner] attended the preliminary hearing, he would have been aware of the nature of the evidence against him and had the opportunity to utilize that knowledge when weighing plea offers. Therefore, the district court concluded, [Petitioner] failed to demonstrate a reasonable probability of a different outcome had counsel ensured he viewed the surveillance video when deciding whether to accept the plea offer. The record supports the district court's decision.

Moreover, [Petitioner] did not demonstrate a reasonable probability there was a plea offer from the State that he would have accepted absent counsel's alleged deficiency, the State would not have withdrawn its plea offer in light of intervening circumstances, and the district court would have accepted such offer. *See Laffler v. Cooper*, 566 U.S. 156, 163-64 (2012); *see also Missouri v. Frye*, 566 U.S. 134, 147 (2012) ("To establish a prejudice in this instance, it is necessary to show a reasonable probability that the end result of the criminal process would have been more favorable by reason of a plea to a lesser charge or sentence of less prison time."). Therefore, we conclude the district court did not err by denying this claim without conducting an evidentiary hearing.

ECF No. 40-49 at 4-5.

### iii.  Conclusion

The Nevada Court of Appeals' rejection of Petitioner's claim that trial counsel rendered ineffective assistance was neither contrary to nor an objectively unreasonable application of clearly established law as determined by the United States Supreme Court.

The state appellate court's determination that Petitioner failed to demonstrate a reasonably probability of a different outcome had trial counsel ensured Petitioner viewed the surveillance video when deciding whether to accept the plea offer was not an unreasonable application of the prejudice prong of *Strickland*. As stated by the Nevada Court of Appeals, Petitioner was aware of the nature of the evidence against him because he viewed portions of the surveillance video presented at the preliminary hearing.

Petitioner failed to show a reasonable probability that if trial counsel ensured Petitioner viewed the complete set of surveillance videos available, including portions that may support an argument that Petitioner attempted to help the victim, that Petitioner would have accepted the

13

plea offer. In light of the evidence presented at trial, Petitioner also failed to show a reasonable probability that a different defense including argument that Petitioner attempted to help the victim would have been successful or that the result of the proceeding would have been different. Ground 2 is denied.

### IV.  Certificate of Appealability

This is a final order adverse to Petitioner. Rule 11 of the Rules Governing Section 2254 Cases requires the Court to issue or deny a certificate of appealability ("COA"). Therefore, the Court has *sua sponte* evaluated the claims within the petition for suitability for the issuance of a COA. *See* 28 U.S.C. § 2253(c); *Turner v. Calderon*, 281 F.3d 851, 864-65 (9th Cir. 2002). Pursuant to 28 U.S.C. § 2253(c)(2), a COA may issue only when the petitioner "has made a substantial showing of the denial of a constitutional right." With respect to claims rejected on the merits, a petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (citing *Barefoot v. Estelle*, 463 U.S. 880, 893 & n.4 (1983)). For procedural rulings, a COA will issue only if reasonable jurists could debate (1) whether the petition states a valid claim of the denial of a constitutional right and (2) whether this Court's procedural ruling was correct. *Id.*

Applying these standards, this Court finds that a certificate of appealability is unwarranted.

### V.  Conclusion

It is therefore ordered that Petitioner Donald Kie, Jr.'s third amended petition for writ of habeas corpus (ECF No. 35) is DENIED.

It is further ordered that a certificate of appealability is DENIED.

It is further ordered that the Clerk of the Court is directed to enter judgment accordingly and close this case.

DATED this 10th day of August, 2023.

_____
ROBERT C. JONES
UNITED STATES DISTRICT JUDGE